James Joseph ANTOINE, Plaintiff,

v.

F. J. BOUTELL DRIVEAWAY CO., INC., a Michigan corporation, Defendant.

Civ. A. No. 4369.

United States District Court, D. Delaware.

Dec. 7, 1972.

William J. Wier, Jr., of Connolly, Bove & Lodge, Wilmington, Del., Jacob Kreshtool, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

James A. Walsh, Wilmington, Del., John W. Ester, Matheson, Bieneman, Veale & Parr, Detroit, Mich., for defendant.

## OPINION

STAPLETON, District Judge.

This action seeks damages for breach of contract and is presently before the Court on cross-motions for summary judgment. Fed.R.Civ.P. 56. Jurisdiction is predicated upon diversity of citizenship; the amount in controversy exceeds ten thousand dollars. 28 U.S.C. § 1332(a).

Plaintiff is a truck driver; defendant is his employer. Their relationship, however, has a dual aspect; in addition to the employer-employee relation the parties here are also related as lessor and lessee of certain personal property. As will be developed, the overlapping of these roles is the soil from which the current controversy springs.

It is apparently a common practice in the trucking industry for an employer to lease motor vehicles from its employees for use in its operations. A leased vehicle is operated by its employee-owner under the direction of the employer. Plaintiff is the owner of a truck which he leased to defendant for a period of one year[1] under a lease contract dated March 29, 1968. The company agreed to pay rental compensation equal to a fixed percentage of gross revenue earned by the truck minus the driver's wages and vacation pay at union rates and less those operating expenses specifically assumed by the company. Defendant regularly used plaintiff's equipment in its business until December 1, 1969 when it ceased to do so. Thereafter the equipment stood idle until October 27, 1970 when defendant terminated the lease. Since the unused equipment earned no revenue during this period plaintiff received no rental compensation under the lease contract.

Plaintiff has brought this suit alleging that the lease agreement must be read to include an implied covenant to make reasonable use of his equipment and that defendant's action in failing to use the equipment breached this covenant.

Defendant's response at this juncture is two-fold. It asserts first that this dispute is one arising under a collective bargaining agreement entered into between the Teamsters Union and the company and that this agreement ("the General Agreement") provides elaborate procedures for the settlement of grievances or disputes "arising under, out of, in connection with, or in relation to this collective bargaining agreement." General Agreement, Art. 7, Section 10. The contractual remedy, it is asserted, must be exhausted before resort can be had to this Court. Secondly, defendant asserts that, even if this case were properly here, it would not be a proper one for summary judgment. Disputed factual issues remain, defendant contends, concerning the circumstances under which the equipment lease agreement was executed and these facts are a necessary predicate to any assessment of the intention of the parties.

[1] The lease could be cancelled by either party upon the giving of thirty days written notice and was automatically renewable from year to year.

## I

Defendant characterizes its current controversy with plaintiff as a "labor dispute" and emphasizes that the terms of arrangements between owner-operators and carriers may be so "intimately bound up" with the subject of driver wages and working conditions as to make them proper subjects for collective bargaining between a union and the carriers. Local 24, International Brotherhood of Teamsters v. Oliver, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959); 362 U.S. 605, 606, 80 S.Ct. 923, 4 L.Ed. 2d 987 (1960); A. Duie Pyle, Inc. v. N. L. R. B., 383 F.2d 772 (3rd Cir. 1967). The crucial question for present purposes, however, is not whether the general agreement could have bound plaintiff to arbitrate this dispute, but whether it did. Otherwise stated the question is whether this dispute is one "arising under, out of, in connection with, or in relation to" the General Agreement as those terms are there used.

Article 45 of the General Agreement, entitled "Owner-Operator", recognizes that an employer may lease equipment from owner-operators. Section 4(a) of that Article provides in part as follows:

"For the purpose of protecting the established drivers' rates and established conditions, minimum rental rates for the leasing of equipment owned by employee shall be determined by negotiations between the parties, in each locality, for the equipment used in that locality. At no time will the rental be less than the following:

Tractors only—65% of gross revenue

Tractors, trailers and/or semi-trailers—75% of gross revenue or as otherwise provided for in Local Riders, provided, however, that reduced rates shall not be used for competitive factors against motor carriers in the same immediate area. Driver-owners transporting automobiles shall receive no less than driver's wages plus fifteen cents (15¢) per running mile on a calendar month basis."

A number of detailed contract provisions follow which, among other things, establish equipment charges in various "deadheading" situations and allocate tire, toll and other expenses between the employer and the owner-operators. The only provision of Article 45 which touches in any way upon the amount of employer use of leased equipment is Section 10(b) which provides:

"If a driver-owner is required by the Employer to buy a new truck, he shall be guaranteed minimum equipment earnings of $150.00 per month for a period of one year. Prior to requiring purchase of equipment, the Employer shall notify the driver-owner, in writing. If the driver-owner desires to replace his equipment, the driver-owner shall first consult with the Employer and get instructions in writing. If the Employer does not permit the driver-owner to replace equipment, it shall furnish him with a piece of comparable equipment in line with his seniority."

Neither party contends that Section 10(b) is directly applicable to the facts of this case.

Section 1 of Article 6 of the General Agreement implicitly recognizes that an employer may contract with individual employees so long as such contracts do not conflict with the terms and provisions of the General Agreement.

On March 29, 1968 plaintiff and defendant entered into a written lease of plaintiff's truck. This lease contains twelve sections spelling out the rights and obligations of the parties thereunder. Some of the covenants reflect terms mentioned in the General Agreement; others do not. The compensation to be received by plaintiff is stipulated; no contention is made that this compensation or any other express term of the lease is inconsistent with the provisions of the General Agreement.

The Court is thus presented with a situation where there are two contracts between the parties. The General Agreement sets limits on the scope of bargaining between an employer and

employees who are owner-operators. It does not, however, purport to establish all the terms of the relationship between an employer and an owner-operator and expressly contemplates that they will negotiate independent contracts establishing their respective rights and obligations. The lease agreement negotiated by plaintiff and defendant is an integrated agreement purporting to establish all of the rights and obligations of the parties with respect to equipment rental.

■ The lease contains no arbitration agreement. The arbitration clause contained in the General Agreement refers only to disputes arising out of, in connection with, or in relation to, the General Agreement. Plaintiff alleges ·that the right he relies upon arises from his lease. I conclude that the existence or non-existence of this alleged right is a matter for this Court and not for an arbitrator.

While it is true that cases might arise in the context of these facts where plaintiff's characterization of the source of his rights should not govern, I do not believe that this is such a case. It would be possible, for example, for a dispute to arise under the lease and still be a dispute that arises in relation to the General Agreement. If the question for determination were the proper construction for a covenant in the lease required by and taken from the General Agreement, it might reasonably be inferred that the dispute is one which the parties to the General Agreement intended to be left to arbitration. Such is not the case here; there is no provision in the General Agreement which arguably controls the instant dispute.

Similarly, this case would present a more difficult question if the existence or non-existence of a duty to make reasonable use held the potential of affecting the wages or other conditions of employment of drivers qua drivers. An owner-operator has an interest in addition to his interest in his wages and conditions of employment as a driver. He has a separate interest in the return on his capital investment. *Cf.* United States Steel Corp. v. FASH, 431 F.2d 1046 (1970). Assuming that this return is a permissible subject for collective bargaining, this collective bargaining agreement did not purport to occupy that field. It stipulated *minimum* equipment rentals, for example, leaving the actual rates for subsequent negotiation between the owner-operator and the employer. With one possible exception not here relevant,[2] the purpose of Article 45 appears to have been to preclude individually negotiated contract provisions which would dilute or evade the rights won for drivers in the bargaining process. See Local 24, International Brotherhood of Teamsters v. Oliver, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959); 362 U.S. 605, 606, 80 S.Ct. 923, 4 L.Ed.2d 987 (1960); A. Duie Pyle, Inc. v. N. L. R. B., 383 F.2d 772 (3rd Cir. 1967). If the implied covenant for which plaintiff here contends held such potential, one might read the obligation to arbitrate disputes arising in relation to the General Agreement to include the current dispute. After a thoughtful review of the current record, however, I do not perceive such a relationship between this dispute and the wages and working conditions of drivers.[3] This

2. Section 10(b) may have another purpose. While a negative inference might perhaps be drawn from the inclusion of this section that the parties to the General Agreement did not intend to require use guarantees of an employer in other situations. Section 10(b) does not support an inference that they intended to bar such guarantees as permissible subjects in lease negotiations.

3. In *Oliver* the fixing of minimum rental rates was held to be a proper subject of

mandatory bargaining. The court there pointed out that if owner-operators were permitted to lease their equipment to the company at less than the fair value of such use, their wages would effectively be reduced by the amount of the implicit subsidy. Such an occurrence would, of course, act as a threat to the integrity of the collectively bargained wage structure.

In our case—given the existence of minimum rental rates—the negotiated

fact distinguishes the situation before this Court from the situations before the courts in the cases relied upon by defendant.

Defendant's motion for summary judgment will be denied.

## II

Plaintiff asserts that the equipment lease agreement must as a matter of law be read to include an implied covenant of reasonable use and that summary judgment should be entered in his favor.

■ The Court's task is, of course, to determine and give effect to the intention of the parties. Where parties to a contract have failed to express a covenant that must be implied if their agreement is to have the effect manifestly intended, the law will imply such a covenant. 3 *Corbin on Contracts*, § 562 (1960); New York Casualty Co. v. Sinclair Refining Co., 108 F.2d 65 (C.C.A. 10th 1939). Such a covenant is said to be implied in fact, by which it is meant that parties did in fact intend to so promise but failed to express properly their intention. Adkins v. Adams, 152 F.2d 489 (7th Cir. 1946); Baldwin Rubber Co. v. Paine & Williams Co., 107 F. 2d 350 (6th Cir. 1940) cert. denied 309 U.S. 676, 60 S.Ct. 716, 84 L.Ed. 1021 (1940). "When a court finds and enforces such [an implied] promise as this, it finds it by interpretation of the promisor's words and conduct in the light of the surrounding circumstances." 3 Corbin, *supra*, § 562 at 287.

Defendant has filed an affidavit of its Vice President of Operations which states in part:

"7. The company has used both its own equipment and equipment leased from owner-operators for many years, the company has always reserved the right to use company equipment in lieu of leased equipment; this right has been exercised over the years by the company, is well known to the company's owner-operators and has been accepted by them.

8. Defendant company's volume of traffic is dependent upon automobile production and sales, which fluctuate markedly, and as a result the company has never guaranteed lssors of equipment any minimum use of their vehicles."

■ The form of lease utilized here apparently is a standard instrument used by the defendant in leasing owner-operated vehicles. Defendant asserts that established practices of the company under such contracts and plaintiff's knowledge of such practices negates any inference of an unexpressed covenant of continuing use during the term of the lease. In this context, further development of the facts is required before a conclusion can be reached.[4] Plaintiff's motion for summary judgment will, accordingly, be denied.

Submit order.

---

wage structure cannot be affected by the existence *vel non* of an implied covenant of reasonable use; it is only when in fact the leased vehicle is used by the company that a potential for an implicit subsidy exists. So long as the rental payments fairly return costs to the owner-operator whenever the equipment is in fact used, any agreement as to how much, if at all, the equipment will be used would seem irrelevant to the integrity of the negotiated wage structure.

4. Plaintiff relies most heavily on the words of Professor Corbin: "In any commercial agreement in which the compensation promised by one to the other is a percentage of profits or receipts, or is a royalty on goods sold, manufactured or mined,

there will nearly always be found an implied promise of diligent and careful performance in good faith and of forbearance to make performance impossible. . . . " 3 *Corbin, supra*, § 568 at 331. But this statement does not resolve this case. "Nearly always" is not always. Moreover, assuming a covenant with respect to "diligent performance" is to be implied, what are to be the terms of that covenant: To use whether there is any business? To use when there is any business? To use where there is more business than the carriers own existing equipment can handle? To use when there is more business than the carriers own equipment and equipment leased under prior agreements can handle? etc.