Jack O. SNYDER, an Individual, et al., Plaintiffs,

v.

HOWARD JOHNSON'S MOTOR LODGES, INC., a Delaware Corporation, et al., Defendants.

No. P–CIV–75–0132.

United States District Court, S. D. Illinois, N. D.

April 22, 1976.

Merrick C. Hayes, Bloomington, Ill., William T. Huyck, Edward F. Ryan, Chicago, Ill., for plaintiffs.

Kevin Hern and Philip G. Koenig, Boston, Mass., Lyle W. Allen, Peoria, Ill., for defendants.

## OPINION AND ORDERS

ROBERT D. MORGAN, Chief Judge.

Plaintiffs bring this six-count complaint against the defendants, alleging violation of federal and state antitrust laws and breach of contract. Though there are several named plaintiffs and defendants, hereafter each side may at times be referred to in the singular. Jurisdiction for the federal claims is under 28 U.S.C. §§ 1331, 1332 and 1337, and for the state claims under the doctrine of pendent jurisdiction. Count I alleges breach of contract. Counts II and III allege violations of Section 1 of the Sherman Act. Count IV is brought under the Clayton and Robinson-Patman Acts. Counts V and VI are state statutory counts alleging violations of the Illinois Antitrust Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, respectively.

Plaintiff Snyder is principal owner of the Champaign-Urbana Motor Lodge, Inc., which operates with him a Howard Johnson Lodge at Urbana, Illinois, under license from defendant Howard Johnson Company; and he is also sole beneficiary of the land trust of plaintiff bank which leases the restaurant adjoining the motel to Howard D. Johnson Company, which operates it. The latter is a wholly-owned subsidiary of Howard Johnson Company. Howard Johnson Motor Lodges, Inc. is inactive.

Defendant has moved for judgment under Rules 12(c) and 56(b), Federal Rules of Civil Procedure, and for dismissal of the complaint. Plaintiff opposes the motion by stating that disputed issues of fact do exist and should be determined at trial. For a court to grant summary judgment, the materials before the court must show clearly that there is no genuine issue of material fact requiring trial and that the movant is entitled to judgment as a matter of law.

## COUNT I

Plaintiff alleges breach of the License and Lease Agreements by the defendant. Specifically, it is alleged that the License Agreement was entered into with the understanding that it was the policy and practice of the defendants to refrain from the construction and operation of competing Howard Johnson's motor lodges. As to the Urbana Restaurant lease, it is alleged that the lease was executed with the understanding that it was the policy and practice of the defendant to operate restaurants of good quality and that the financial success of the Urbana Lodge was dependent on a good quality restaurant.

First, as to the License Agreement between plaintiff Snyder and defendant Howard Johnson Company, it is undisputed that the written contract contains no provision limiting the defendant's discretion to build another lodge in the Champaign-Urbana area. Also undisputed is the fact that Snyder and representatives of Howard Johnson Company discussed, prior to the execution of the License Agreement, the possibility of territorial protection. Snyder asked for an exclusive rights provision in a letter to Howard Johnson Company, dated November 13, 1964. (Pl. ex. 31.) Snyder, through his attorney, then, in the alternative, asked for a first right of refusal. (Pl. ex. 29.) The attorney was informed on February 8, 1965, that the Howard Johnson Company board of directors would probably not approve a first right of refusal. Snyder then forwarded copies of the License Agreement, on March 12, 1965, to Howard Johnson for

its execution. Also undisputed is clause 20 of the License Agreement, which provides:

"This instrument contains an agreement of the parties, and no representations, inducements, promises or agreements, oral or otherwise, not embodied herein or in similarly executed instruments shall be of any force or effect."

The License Agreement represents itself as being the final and complete agreement between the parties. Normally, parol evidence cannot be introduced to modify the provisions of a final and integrated contract. Plaintiff's complaint suggests that there was an understanding not included in the written contract. However, in Plaintiff's Memorandum in Opposition to Defendant's Motion, plaintiff states that the cause of action is based on defendant's breach of the implied covenant of fair dealing. The court considers the License Agreement to be a final and complete agreement, so as to preclude parol evidence of contrary intent. Whether a covenant of fair dealing can be implied is another issue and is a question of law for the court to decide.

Plaintiff cites Williston on Contracts for the proposition that in every contract there exists an implied covenant of good faith and fair dealing. This proposition is converted by the plaintiff into a covenant by the defendant not to compete in the Champaign-Urbana motel market. While fair dealing is implied in any contract, the court is unable to extend this principle to imply a covenant against competition.

To imply a negative covenant in any written agreement requires the court to rewrite what the parties intended but did not include in the written agreement. To that extent the court is imposing its notions of equity and fair play. I. A. Corbin, Contracts § 19, at 46 (1963). The court can only declare implied covenants when there is a reasonable basis to imply certain duties of the parties. *Adkins v. Adams*, 152 F.2d 489, 492 (7th Cir. 1945). The basis for an implied covenant "is that the parties to the

contract would have expressed that which the law implies had they thought of it or had they not supposed it was unnecessary to speak of it because the law provided for it." 12 I.L.P. Contracts § 230, p. 400. Territorial protection was not a provision either ignored or thought unnecessary by the parties. Negotiations concerning both territorial exclusive rights and a first right of refusal occurred before the written agreement. In light of all the circumstances, the court cannot interpret the defendant's words and conduct as implying a covenant not to compete in the Champaign-Urbana motel market. *See Antoine v. F. J. Boutell Driveaway Co., Inc.*, 351 F.Supp. 1271, 1275 (D.Del.1972).

The Lease Agreement was executed by the Peoples Bank of Bloomington, as trustee, to Howard D. Johnson Company, which operates Howard Johnson restaurants. Plaintiff alleges defendant has breached the Lease Agreement by operating the Urbana Restaurant in a substandard manner, thereby damaging the business of the Urbana Lodge.

It is clear to all, and undisputed, that the Urbana Lodge and Restaurant are operated as a consumer package to serve the traveling public. The financial success of the lodge is dependent on the restaurant, and vice versa. Also undisputed is the fact that the Lease Agreement contains no provisions on the quality of service and food to be offered by the defendant. Defendant agrees to pay a minimum rental of $22,000 per year, plus 5 percent of the gross sales in excess of 20 times the minimum rental.

Plaintiff argues that a covenant of fair dealing is implied from the Lease Agreement. Defendant states that standards for operation of a business cannot be implied where so much depends on business judgment. Defendant also argues that any understanding as to quality is not based on conversations with it, but on plaintiff's general knowledge of the operation of other Howard Johnson's restaurants.

 Notwithstanding the lack of conversations, a covenant of fair dealing may well be implied here. Where the fruits of a contract to one party depend on the efforts of another, a covenant of fair dealing can be implied. *Parev Products Co. v. I. Rokeach & Sons, Inc.*, 124 F.2d 147 (2d Cir. 1941). Defendant argues that the existence of a high minimum rental negates any duty by the defendant to operate the Urbana Restaurant in a good faith, quality manner. Whether the $22,000 minimum rental is adequate to have such effect is a disputed question of fact which the court is unable to decide on a motion for summary judgment. This argument also ignores the impact a substandard restaurant has on motel revenues, as distinguished from restaurant lease revenues.

 The court should not attempt to impose an abnormally high standard of duty upon the defendants. Rather, a duty to operate the Urbana Restaurant in a manner consistent with other Howard Johnson restaurants would seem appropriate. The duty to operate the Urbana Restaurant in such a manner is part of the duty of fair dealing which will be implied, and the motion must be denied as to Count I with respect to the lease agreement.

## COUNT II

Both plaintiff and defendant have thoroughly briefed the issue of a federal antitrust violation. The thrust of defendant's argument is that the undisputed evidence does not support any inference of a violation of Section 1 of the Sherman Act. While plaintiff's evidence may be thin on several elements, disputed issues of material fact make grant of a motion for summary judgment inappropriate.

Plaintiff alleges that the Howard Johnson Company and its subsidiaries conspired to eliminate him from competition by engaging in unfair business practices. Particularly, plaintiff alleges that the Champaign Lodge was opened and operated with intent to injure him, that the Urbana Restaurant has been operated in a manner designed to injure him, and that the lease and license restrictions concerning the Urbana Restau-

rant were drafted with an intent to reduce competition. Among the allegations are claims that the Champaign Lodge was granted discriminatory supply prices and that the Champaign Lodge charged lower room rentals than the plaintiff's Urbana Lodge. Plaintiff states that the purpose of all these practices was to eliminate him from competing in the Champaign-Urbana motel market.

Defendant argues that it is, per se, lawful for a franchisor to inject new competition into the market. Indeed, the purpose of the Sherman Act is to foster competition. Plaintiff alleges that the conspiracy here is to destroy competition by substituting a franchisor for a franchisee, i. e., force him to sell to them at a low price. While the opening of the Champaign Lodge may increase competition, defendant's alleged purpose could, and if truly pursued inevitably would, decrease competition.

Plaintiff must prove the requisite intent, but he is not limited to evidence in the form of discovery and affidavits before the court on a motion for summary judgment. Intent is a fact question with the best evidence in the possession of the defendant, but what defendant says is not conclusive.

Defendant claims there is a lawful basis and good faith business purpose for every one of its actions regarding the Urbana and Champaign lodges. Plaintiff's allegations cannot be separately analyzed and dismissed. The character of a conspiracy is a series of acts and parties. The plaintiff should be given the opportunity to present his total proof to the jury. *Continental Co. v. Union Carbide*, 370 U.S. 690, 699, 82 S.Ct. 1404, 1410, 8 L.Ed.2d 777, 784 (1962). Judgment for defendants may be compelled if there is no anti-competitive intent, but the court cannot determine that at this point. The burden is on the movant to show the absence of any genuine issue of fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142, 151 (1970), and the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party. *Ibid*, 158, 159, 90 S.Ct. 1608, 1609, 26 L.Ed.2d 154, 155. The burden is a heavy one in cases involving intent and motive. *Tankersley v. Albright*, 514 F.2d 956, 963 note 8 (7th Cir. 1975); *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962). Plaintiff should be given his day in court to present all his evidence of defendant's intent.

The ultimate question is intent. Plaintiff cites *Albert Pick-Barth Co. v. Mitchell Woodbury Corp.*, 57 F.2d 96 (1st Cir. 1932), and its progeny, *Perryton Wholesale, Inc. v. Pioneer Distributing Co.*, 353 F.2d 618 (10th Cir. 1965), and *Atlantic Heel Co. v. Allied Heel Co.*, 284 F.2d 879 (1st Cir. 1960), in support of the proposition that a conspiracy to destroy a competitor by unfair business practices is a per se violation of Section 1 of the Sherman Act. The First Circuit, which created the *Pick-Barth* doctrine, retreated from that position in *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547 (1st Cir. 1974). A "rule of reason" was added, with a consideration of the effect of a defendant's conduct on some significant part of the market. 508 F.2d 562. *Whitten* has been interpreted to require intent to eliminate and not just to injure. *Tower Tire & Auto Center, Inc. v. Atlantic Richfield Company*, 392 F.Supp. 1098, 1107 (S.D.Texas 1975). *Tower* listed the elements for antitrust, anti-competition recovery as (1) proof of an agreement, combination or conspiracy, (2) proof of the use of unfair methods of competition, and (3) proof of an intent to eliminate. A fourth possible element, market power of the defendant, was discussed in relation to *Whitten's* mention of "some significant part of the market," but the court there noted ARCO was presumed to be a significant market force. Like ARCO in the oil industry, Howard Johnson Company is considered by the court to be a significant force in the motel market, nationally and in the Champaign-Urbana area. The motion must be denied as to Count II.·

## COUNT III

Count III of the complaint alleges the lease and license restrictions which prohibit the plaintiff from building a restaurant within 1500 feet of the Urbana Howard Johnson's Restaurant constitute contracts in restraint of interstate commerce, thereby violating Section 1 of the Sherman Act, 15 U.S.C. § 1. Defendants claim that the restrictions do not violate the Sherman Act as a matter of law, and that summary judgment is appropriate.

As previously noted, the test for summary judgment under Rule 56 is the presence of genuine issues of material fact. There are, indeed, many disputed issues of fact in this antitrust lawsuit. The pertinent question here is whether any of those issues are material to this alleged violation of Section 1 of the Sherman Act.

■ The lease and license agreements provide that the defendants lease the Urbana Restaurant from the plaintiffs for $22,000 per year, with presumably possible increments based on business volume. It is undisputed that the restaurant and lodge are in a symbiotic relationship, each dependent on the other for the greatest success. The lodge attracts customers for the restaurant, and vice versa. The mutual purpose must be to operate the lodge and restaurant to the mutual advantage of the plaintiffs and defendants. The restrictions are merely ancillary to that purpose. *United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir. 1898); *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 315 F.Supp. 45 (S.D.N.Y.1970). By prohibiting the plaintiffs from building competing restaurants within 1500 feet of the present lodge-restaurant, the defendants are reasonably protecting their legitimate interest in the leasehold. The restriction only extends to the immediate area surrounding the lodge and does not in any sense monopolize any definable restaurant market.

Plaintiffs would have the court hold that certain "shopping center cases" control the result here. Those cases are unique in their facts. Shopping centers are centralized markets attracting great numbers of consumers because of the ease of broad one-stop shopping. Denial of entry to smaller shops into a shopping center may well be, for practical purposes, a denial of opportunity to operate. Larger department stores can thus wield great power in monopolizing competition. The immediate area of a highway interchange is not the equivalent of a shopping center. The plaintiffs seek to characterize the land they own at the interchange here involved as the identifiable market. The record clearly demonstrates beyond dispute that there are other motels and restaurants nearby along Route 45. The relevant market may not be so restricted as to convert an otherwise reasonable restriction into a contract in restraint of interstate commerce. Defendant is entitled to judgment as a matter of law on Count III.

## COUNT IV

Count IV of the complaint alleges price discrimination by the defendants, in violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). Plaintiffs allege that price discrimination in the furnishing of supplies has lessened and injured competition in the motor lodge business in Champaign-Urbana, and, in particular, between the Champaign and Howard Johnson Urbana lodges. Defendants move for summary judgment on the ground that there have not been two sales within the Robinson-Patman Act.

■ There must be two sales to violate the Robinson-Patman Act. *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1219, 1227 (1947). Defendant argues that there have been no sales to the Champaign Lodge as alleged by the plaintiff. Rather, defendant characterizes the supply of articles as an intra-corporate transfer on its internal accounts. It has been held that it is possible for a wholly-owned subsidiary to be considered independent of its parent, to create a purchaser-seller relationship for Robinson-Patman Act purposes. *Danko v. Shell*

*Oil Co.*, 115 F.Supp. 886 (E.D.N.Y.1953). The parties have stipulated that Landmark Supply Division of Howard Johnson Company furnishes supplies to the Champaign Lodge owned by Howard Johnson Company. Here the transfers are not between parent and subsidiary but within the same corporation with no transfer of title. For there to be a sale, title must clearly be transferred from seller to buyer. *See Reines Distributors, Inc. v. Admiral Corporation*, 241 F.Supp. 814, 815 (S.D.N.Y.1964).

Intra-corporate transfers are not the type of transactions the Robinson-Patman Act meant to regulate. The value at which goods are carried within the same corporation cannot affect competition between a company-owned enterprise and a licensed enterprise, nor diminish competition among similar enterprises in the relevant market. The motion must be allowed as to Count IV.

### COUNT V

▮ Plaintiff alleges in Count V that all the defendant's actions cognizable under the federal antitrust laws may also be grounds for state antitrust violations. Section 11 of the Illinois Antitrust Act, Ill.Rev. Stat. ch. 38, § 60–11, does provide that when the language of the federal and state statutes are similar, the same construction should be given to both. Chapter 38, Section 60–3(2) of Illinois Revised Statutes, on which this count is based, states that any contract, combination, or conspiracy with one or more persons, which unreasonably restrains trade or commerce is violative of the Act. A rule of reason is thus applied to all alleged state antitrust violations. *People ex rel. Scott v. Convenient Food Mart, Inc.*, 21 Ill.App.3d 97, 315 N.E.2d 124 (1974). Plaintiff can proceed with the state antitrust claim in the same manner and to the same extent as with the federal antitrust claim in Count II.

### COUNT VI

▮ The last count of the complaint alleges that the same series of acts by the defendant are actionable under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, § 261 et seq. Section 262 declares unlawful unfair methods of competition in the conduct of any trade or commerce. The Act prior to 1973 extended protection only to consumers and borrowers. By amendment, the Act added businessmen to its protection, effective October 1, 1973. An Illinois court has held that the previous Act did not include protection for a purchaser of a franchise. *People ex rel. Scott v. Cardet International, Inc.*, 24 Ill.App.3d 740, 321 N.E.2d 386. The present Act cannot be given retroactive effect, and any bearing it has on the case relates solely to acts occurring after October 1, 1973.

### CONCLUSION

Pursuant to Rule 56(d), the court must find the facts which exist without substantial controversy and the genuine issues of material facts which remain when the case is not fully adjudicated on a motion for summary judgment. The facts which have been heretofore stated do exist without substantial controversy and will hereafter be considered as fully proved for purposes of this litigation. If the parties can stipulate to all or substantially all of such facts, such stipulation will be read to the jury. Otherwise, the court will state such facts as being found by the court to be beyond dispute and not on trial.

The genuine issues of material fact for trial are as follows:

a. the intent and motive of the defendant in the opening and operation of the Champaign Lodge and any changes in the operation of the Urbana Restaurant,

b. the effect of the opening and operation of the Champaign Lodge and any changes in the operation of the Urbana Restaurant on the business of the Urbana Lodge,

c. the quality of food, service, and surroundings of the Urbana Restaurant in relation to other Howard Johnson restaurants,

d. the effect of other factors in the motel market on the business of the Urbana Lodge.

Accordingly, IT IS ORDERED that defendants' motion for summary judgment is DENIED with respect to Counts I, II, V and VI, except to the extent that the foregoing opinion indicates partial allowance with respect to any such count.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is ALLOWED with respect to Counts III and IV, and judgment is entered in favor of defendants on those counts.