The **PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
Plaintiff-Appellant,

v.

**Christopher P. SIPULA,**
Defendant-Appellee.

**No. 84–1306.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1984.
Decided Oct. 30, 1985.
Rehearing Denied Dec. 5, 1985.

Michael P. Mullen, Burke, Griffin, Chomicz & Wienke, Chicago, Ill., for plaintiff-appellant.

Barry L. Kroll, Jacobs, Williams & Montgomery, Ltd., Chicago, Ill., for defendant-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and DOYLE, Senior District Judge.[*]

ESCHBACH, Circuit Judge.

The primary question presented in this appeal is whether, in the absence of any express restrictions on post-termination activities in an insurance agent's contract, an insurance company has a right to prevent a former agent from selling policies of different insurance companies to his former customers when the new sales result in the cancellation of the original policies he sold or serviced for his former employer. The district court dismissed the insurance company's complaint for failure to state a claim upon which relief could be granted. For the reasons stated below, we will reverse the judgment of dismissal and remand for further proceedings.

I

In considering the propriety of the district court's dismissal of this action, we must accept the well-pleaded *factual* allegations of the complaint as true. *Hishon*

---

[*] The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, sitting by designation.

*v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1104 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). We are of course not bound by the plaintiff's legal characterizations of the facts. *See Car Carriers,* 745 F.2d at 1106–07.

On May 31, 1977, defendant Sipula entered into an "Agent's Agreement" in Ottawa, Illinois, with Prudential Insurance Company of America ("Prudential"). According to the agreement, which was drafted and printed by Prudential, Sipula agreed to "promote the success and welfare of [Prudential]; conform to and abide by its instructions, rules and requirements; and refrain from engaging in any other pursuit or calling from which [he would] receive financial remuneration *while this Agreement is in force."* Agreement § 1 (emphasis added). As part of this general obligation, Sipula agreed to "canvass regularly for applications for insurance policies and annuity contracts of the kinds and upon the plans sold by [Prudential]," to "advocate the class of insurance most suitable to the applicant's position," to "not press for a larger amount of insurance than the applicant is able to maintain," to "endeavor to keep in force the existing insurance of [Prudential]," to "secure the reinstatement of insurance that has lapsed," and to "perform all duties, incident to the care and conservation of [Prudential]'s business, that may be assigned to [him] from time to time by [Prudential]." *Id.* § 2. Additional duties regarding, *inter alia,* premiums, reports, accounting, and expenses were set forth. The agreement also stated that "all books, records, and supplies furnished to [Sipula] by [Prudential] shall be the property of [Prudential]." *Id.* § 7(b).

The agreement provided further that Sipula's "appointment as Agent and this Agreement may be terminated either by [Sipula] or [Prudential] *at any time." Id.* § 13 (emphasis added). Upon termination, Sipula was required to:

(1) "submit books and records [of accounts indicating money received by Sipula on Prudential's behalf] for an inspection and accounting," *id.* § 7(a);

(2) "hand over" "to a proper representative of" Prudential "all books, records, and supplies furnished" to Sipula by Prudential, *id.* § 7(b);

(3) grant a "prior lien" to Prudential for any indebtedness from Sipula "upon any amounts due [Sipula], [his] executors, administrators or assigns, by the terms of this Agreement, until the amount of such indebtedness is fully paid," *id.* § 14; and

(4) authorize Prudential to release to third parties, upon request, information regarding Sipula's "personal character, habits, ability, and cause for leaving the service" and to release [Prudential] "from all liability for damages in connection with the furnishing of such information," *id.* § 15.

No other post-termination obligations were expressly imposed. No mention was made of the confidential nature of policyholder information.

From approximately June 20, 1977, to July 9, 1982, Sipula was employed by Prudential pursuant to the agreement discussed above and was assigned to Prudential's State Park District Office in Ottawa, Illinois. During his employment with Prudential, Sipula sold several types of Prudential whole-life insurance policies to customers in or about the Ottawa, Illinois, area. He also "serviced" these new policyholders as well as other policyholders assigned to him whose policies had previously been issued by Prudential.

A Prudential whole-life insurance policy is a contract between the policyholder and Prudential that is, in the words of the policy, "insurance for the whole of life." Under the policy, Prudential agrees to pay a specified sum to the policyholder or beneficiary on the death of the insured, and to pay dividends and other benefits during the life of the policy. The policies are based on actuarial assumptions that anticipate a long-term contractual relationship. The premium rates, estimates of expected divi-

dends, cash surrender value accumulations, mortality assumptions, and other aspects of the policy are premised on the contract remaining in force for a number of years. It has been Prudential's experience that whole-life policies typically remain in effect for more than fifteen years. The policies, however, may be cancelled by the policy-holder at any time. Thus, the fifteen-year figure only represents an average.

After selling a whole-life policy, Sipula received first-year commissions from Prudential equal to approximately 40 to 55% of the first-year premiums paid by the policy-holder. Sipula also received service commissions on policies he was assigned to service, but had not sold.

During his employment with Prudential, Sipula was given access to information maintained on each policyholder with whom he dealt. This information "was compiled by Prudential at considerable effort and expense and is not readily available from other industry sources." Complaint ¶ 19. The information "included, *inter alia*, the identity of Prudential policyholders, policy amounts, premium rates, ages, condition of health, available life insurance premium ratings, policy anniversary dates, premium payment dates, beneficiary names, settlement options chosen, dividend options chosen, dividend accumulations, annual increases in cash surrender values and accumulated cash surrender values." *Id.* According to the complaint, Sipula "was expressly and impliedly bound to treat such confidential and proprietary information as the property of Prudential and not to disclose such information to third parties or use such information on his own account or on account of others." *Id.*

On or about July 9, 1982, Sipula was terminated as a Prudential agent. He then became an agent for a number of other life-insurance companies and competed with Prudential in the sale of whole-life insurance policies. When he was fired, Sipula threatened to cause the termination of Prudential whole-life insurance policies that he had either sold or serviced for Prudential. After his discharge, he did cause the termination of such policies. Like Prudential, the insurance companies for which Sipula now worked also paid and will continue to pay first-year commissions equal to approximately 50% of the first-year premiums for the new policies Sipula sold that replaced the Prudential policies he sold or serviced. Sipula used "without justification" the information about Prudential policyholders he had acquired as a Prudential agent in the sales of new policies of other companies that resulted in the cancellation of the original Prudential policies that he had either sold or serviced. He also did not comply with regulations issued by the Illinois Department of Insurance that require the filing, by the agent causing the replacement of life-insurance policies, of a Notice Regarding Replacement of Life Insurance. Sipula also failed to comply with Illinois regulations that require that the policyholder be given a Comparative Information Form.

Prudential filed this diversity action in federal court on February 16, 1983, and directed a veritable fusillade of legal theories at Sipula in order to halt his activities. Only the first five counts of the amended complaint, however, are relevant to this appeal. In that amended complaint, Prudential alleged that Sipula had tortiously interfered with Prudential's contractual relations with its policyholders (Count I), that he had breached an implied covenant of good faith and fair dealing (Count II), that his actions constituted a breach of a fiduciary duty (Count III), that his activities violated the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 262 (Count IV), and that his activities constituted unfair competition under the common law (Count V). Prudential sought injunctive relief and damages, as well as attorneys' fees and any other relief the court might deem appropriate.

Pursuant to Fed.R.Civ.P. 12(b)(6), Sipula filed a motion to dismiss. In its order dated December 5, 1983, the district court dismissed Counts I through V and directed Prudential to file an amended complaint. Prudential chose, however, not to amend.

On January 3, 1984, the district court entered a final judgment dismissing the action. This appeal followed.

## II

■ The parties and the district court concluded that Illinois substantive law applied in this diversity action and we see no reason to disturb that determination. The district court's order was quite brief and focused primarily on Prudential's allegations that Sipula had improperly used confidential information. Nonetheless, the use of such information is not the only basis upon which Prudential seeks to recover. To the extent possible on the scant record before us, we will also address these other theories. We would add that there is a substantial amount of overlap in Prudential's theories for recovery and that the unfocused presentation of this appeal by both sides has not aided our review.[1]

### A. *Violation of Illinois Insurance Regulations*

Prudential generally seeks to recover on the theory that it was injured by Sipula's alleged failure to comply with Illinois Department of Insurance Rule 9.17 (now codified at 50 Illinois Administrative Code § 917 (1985)). The purpose of this rule is to "regulate the activities of insurers and agents with respect to the replacement of existing life insurance" and to *"protect the interests of life insurance policyholders* by establishing minimum standards of conduct to be observed in the replacement or proposed replacement of existing life insurance" (emphasis added). Rule 9.17 § 2 (50 Illinois Administrative Code § 917.20 (1985)).

■ These regulations were promulgated by the Illinois Director of Insurance pursuant to his authority under Ill.Rev. Stat. ch. 73, ¶ 1013. An elaborate procedure is established for the enforcement of these administrative provisions. *See id.* ¶¶ 1032–1037; *see also* Rule 9.17 §§ 1, 10 (repealed by 8 Ill.Reg. 11,365, 11,379 (1984)); *cf. People v. Hargreaves,* 303 Ill. App. 387, 25 N.E.2d 416 (1940). It may be generally true under Illinois law that the violation of a regulation may constitute *"prima facie* evidence" of *negligence, see Davis v. Marathon Oil Co.,* 64 Ill.2d 380, 1

---

1. In his brief filed with this court, Sipula states that he "adopts" the briefs filed in the district court and "incorporates them by reference" in his appellate brief. We wish to express in the strongest terms our disapproval of this practice. First, it is ill-advised from the point of view of effective advocacy, as it unnecessarily confuses and diffuses the issues presented. The posture and focus of this case has changed substantially on appeal and many of the arguments made below are now irrelevant. At the same time, there is also an unacceptable amount of redundancy, as several of Sipula's arguments on appeal were presented below.

Second, this practice results in a composite brief of more than 50 pages, yet Sipula never moved under Fed.R.App.P. 28(g) and Circuit Rule 9(h) to file an oversized brief. If all three briefs filed below (Sipula's initial brief in support of his 12(b)(6) motion, Prudential's brief in opposition, and Sipula's reply brief) are added to Sipula's brief filed before this court, the total length is 83 pages. This is highly inappropriate. *See Bobsee Corp. v. United States,* 411 F.2d 231, 234 n. 2 (5th Cir.1969). Even if we disregard the Prudential brief in opposition (which renders much of Sipula's reply brief filed below meaningless), the number of pages still exceeds the 50-page limit. As we stated in *United States*

*v. Devine,* 768 F.2d 210, 210 (7th Cir.1985), the 50-page limitation "is a ceiling, not a floor, and a ceiling we rarely allow to be pierced." Motions to file oversized briefs are not favored and are granted only in exceptional circumstances. *Id.* (quoting Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit 3, 47 (1984 ed.)). In *Devine* we also stated:

> The purpose of this opinion is to serve notice on the bar that the court intends to enforce the rules strictly, insisting that an oversized brief not be filed before the motion to file such a brief is granted and denying such motions in all but truly exceptional circumstances. The burden of reading oversized briefs has become a serious one in this age of swollen caseloads, and the court expects the bar to cooperate in reducing the burden.

*Id.* at 211.

Because Sipula filed his brief before the *Devine* decision, we will not impose sanctions. However, we will not hesitate to do so in the future. Nonetheless, in deciding this appeal, we have relied primarily on appellee's brief filed with this court and any risk of oversight or of the failure to present properly the arguments on appeal rests with Sipula.

Ill.Dec. 93, 356 N.E.2d 93 (1976). However, the use of a safety regulation to establish a duty of care in a negligence action is quite different from an insurance company's use of an insurance regulation in an action against a former employee to restrain the latter's competitive activities. In addition, Rule 9.17 expressly states that it was intended to protect *policyholders*, not insurers, and a recent Illinois decision suggests that the rule may not serve as an independent basis for an implied right of action for insurance companies suing their former agents unless the rule is incorporated into the agency contract. *See Fox v. Inter-State Assurance Co.*, 84 Ill.App.3d 512, 39 Ill.Dec. 894, 405 N.E.2d 873 (1980). Without further guidance from the Illinois judiciary, this federal court sitting in diversity will not under the facts alleged in this action take the innovative step of providing insurance companies with an implied private right of action under Rule 9.17.

## B. *Tortious Interference*

Count I of the complaint alleges that Sipula "intentionally and maliciously interfered with" Prudential's "advantageous relations and contracts without justification by inducing and causing Prudential policyholders to terminate their whole life policies which he had sold or serviced." Complaint ¶ 19. The tort of interference with contractual relations has a checkered past, *see* Prosser & Keeton, The Law of Torts, § 129 at 983 (5th ed. 1984) (Lawyer's Edition), and must be applied with caution.[2] It has been recognized in Illinois and the requisite elements are set forth in *Belden Corp. v. Internorth, Inc.*, 90 Ill.App.3d 547, 551, 45 Ill.Dec. 765, 768, 413 N.E.2d 98, 101 (1980). An extended discussion of this tort is unnecessary, however, because an essential element, *i.e.*, Sipula's inducement of a *breach* on the part of the insured, is conspicuously absent in Prudential's allegations. *See Pfendler v. Anshe*

*Emet Day School*, 81 Ill.App.3d 818, 824–25, 37 Ill.Dec. 1, 4–5, 401 N.E.2d 1094, 1097–98 (1980). Prudential in fact concedes that no breach occurred, because the whole-life policies at issue could be terminated by the policyholders for any reason. Thus, Prudential has no cause of action against the promisors for breach of contract.

■ A defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations. *See Belden Corp. v. Internorth, Inc.*, 90 Ill.App.3d 547, 45 Ill.Dec. 765, 413 N.E.2d 98 (1980); *Candalaus Chicago, Inc. v. Evans Mill Supply Co.*, 51 Ill.App.3d 38, 47–49, 9 Ill. Dec. 62, 69–70, 366 N.E.2d 319, 326–27 (1977); *Supreme Savings & Loan Association v. Lewis*, 130 Ill.App.2d 16, 264 N.E.2d 857 (1970); Restatement (Second) of Torts § 768 & comment i; *cf. TAD, Inc. v. Siebert*, 63 Ill.App.3d 1001, 1006–07, 20 Ill. Dec. 754, 759–60, 380 N.E.2d 963, 967 (1978). As the court explained in *Belden*, 90 Ill.App.3d at 552, 45 Ill.Dec. at 550–51, 413 N.E.2d at 101–02:

> The elements of the tort of interference with prospective advantage are similar [to those of the tort of interference with contractual relations], but not identical. The plaintiff must have a reasonable expectancy of entering a valid business relationship, and defendant must purposely interfere and defeat this legitimate expectancy, thereby causing harm to the plaintiff. [citations omitted] Unlike the right to receive the benefits of a contract, the right to engage in a business relationship is not absolute, and must be exercised with regard to the rights of others. *The rights of others most commonly take the form of lawful competition, which constitutes a privi-*

---

**2.** "[A] broad generalization [about tortious interference] could make prima facie torts of otherwise lawful activities designed to persuade others to stop smoking cigarettes or eating certain foods, or using certain pesticides, or doing business in South Africa, or buying grapes or other products...." *Top Service Body Shop, Inc. v. Allstate Insurance Co.*, 283 Or. 201, 205 n. 3, 582 P.2d 1365, 1368 n. 3 (1978).

*leged interference with another's business.* [citations omitted]

.... An individual with a prospective business relationship has a mere expectancy of future economic gain; a party to a contract has a certain and enforceable expectation of receiving the benefits of the contract. When a business relationship affords the parties no enforceable expectations, but only the hope of continued benefits, the parties must allow for the rights of others. *They therefore have no cause of action against a bona fide competitor unless the circumstances indicate unfair competition, that is, an unprivileged interference with prospective advantage.* [footnote omitted] *In sum, as the degree of enforceability of a business relationship decreases, the extent of permissible interference by an outsider increases.*

 Thus, to the extent that Prudential seeks to prevent Sipula from competing generally with his former employer, Count I must necessarily fail to state a claim.[3] No business has a proprietary interest in its customers themselves. *See Hydroaire, Inc. v. Sager,* 98 Ill.App.3d 758, 766, 53 Ill.Dec. 928, 934, 424 N.E.2d 719, 725 (1981). However, Prudential also argues that Sipula improperly used confidential information he acquired as a Prudential agent to cause the cancellation of the Prudential policies he had either sold or serviced. Prudential may have a legitimate business interest in confidential business information and the improper use of such information by Sipula is "unfair competition." *See James C. Wilborn & Sons, Inc. v. Heniff,* 95 Ill.App.2d 155, 237 N.E.2d 781 (1968); *Schulenburg v. Signatrol, Inc.,* 50 Ill.App.2d 402, 200 N.E.2d 615 (1964), *aff'd in part and rev'd in part,* 33 Ill.2d 379, 212 N.E.2d 865 (1965), *cert. denied,* 383 U.S. 959, 86 S.Ct. 1225, 16 L.Ed.2d 302 (1966). Information about insurance policyholders may be accorded "confidential" status, *see Murphy v. Murphy,* 28 Ill. App.3d 475, 328 N.E.2d 642 (1975), even in the absence of a specific contractual agreement regarding that information, *see, e.g., Holsinger, Theis & Co. v. Holsinger,* 329 Ill.App. 460, 69 N.E.2d 360 (1946); *see also Lincoln Towers Insurance Agency v. Farrell,* 99 Ill.App.3d 353, 54 Ill.Dec. 817, 425 N.E.2d 1034 (1981); *Midwest Micro Media, Inc. v. Machotka,* 76 Ill.App.3d 698, 32 Ill. Dec. 241, 395 N.E.2d 188 (1979); *B.R. Paulsen & Co. v. Lee,* 95 Ill.App.2d 146, 237 N.E.2d 793 (1968); *Litlow v. Aurora Beacon News,* 61 Ill.App.2d 127, 209 N.E.2d 668 (1965). The question of the confidential status of the information is, however, highly fact specific, *B.R. Paulsen & Co.,* 95 Ill. App.2d at 153–54, 237 N.E.2d at 797; *Schulenburg,* 33 Ill.2d 379, 212 N.E.2d 865.[4]

Although the complaint could hardly be called detailed in this regard, it does allege in ¶ 19 that:

---

**3.** As we understand Prudential's complaint and its arguments below and on appeal, it is alleging that Sipula competed with Prudential by convincing the latter's customers to terminate their Prudential policies and to purchase replacement policies from Sipula that were issued by another company. There is no allegation that Sipula made any misrepresentations to his customers or that he attempted to coerce them. Similarly, we do not understand Prudential to claim that Sipula caused the termination of Prudential policies, not as an incident of his competitive activity, but simply as a part of a personal vendetta against Prudential. To the contrary, the allegations are that Sipula solicited his former Prudential clients as an agent of another insurance company, not in his individual capacity. If Prudential claims that Sipula was causing the termination of the policies only in a plan for revenge with no intention of selling replacement insurance, then Sipula would not be act-

ing as a bona fide competitor, *cf. City of Rock Falls v. Chicago Title & Trust Co.,* 13 Ill.App.3d 359, 300 N.E.2d 331 (1973), and Prudential may develop these claims further on remand.

**4.** Our decision in *American Hardware Mutual Insurance Co. v. Moran,* 705 F.2d 219 (7th Cir. 1983), *aff'g* 545 F.Supp. 192 (N.D.Ill.1982), is not to the contrary. *Moran* does not hold that information about policyholders can never be protected under Illinois law. The conclusion that the specific information at issue in *Moran* was not entitled to protection was reached after an evidentiary hearing. *See* 545 F.Supp. at 192. Although we in no way intend to provide a definitive resolution to these questions, we do note that the allegations of the complaint in the instant case describe customers and products with characteristics unlike those found in *Moran.*

In the course of his employment with Prudential, Sipula was given access to confidential and proprietary information maintained on each Prudential policyholder with whom he dealt. Such information was compiled by Prudential at considerable effort and expense and is not readily available from other industry sources. Sipula was expressly and impliedly bound to treat such confidential and proprietary information as the property of Prudential and not to disclose such information to third parties or use such information on his own account or on account of others.

This is sufficient to withstand a 12(b)(6) motion. The district court's dismissal of Count I, construed as pleading the improper use of confidential information, was therefore premature and will be reversed.

### C. Breach of Implied Covenant

In Count II of its complaint, Prudential alleged that "[a]s part of every policy sold or serviced by Sipula for Prudential," and "[b]ased upon the Agent's Agreement," "there existed an implied covenant of good faith and fair dealing and an implied agreement to refrain from doing anything which would destroy or injure Prudential's rights to receive the fruits of its insurance contracts with its policyholders," and that "[s]aid covenant and agreement applied to each and every policy sold or serviced by Sipula for the expected duration of that policy." Complaint ¶¶ 46, 47.

Prudential in this appeal strenuously urges that this court must "find" an implied covenant in the Agent's Agreement. It is clear that the primary motivation for

Prudential's vigorous prosecution of this action is that it is now dissatisfied with the agreement that it presumably signed with many other agents. Prudential now wishes that the contract had placed substantial limitations on an agent's post-termination activities. However, a plaintiff ordinarily cannot enlist the support of the judiciary to reform a contract the plaintiff and defendant freely entered into. As stated in *Village of Grandview v. City of Springfield*, 122 Ill.App.3d 794, 798, 78 Ill.Dec. 197, 201, 461 N.E.2d 1031, 1035 (1984), "the court cannot add to contracts of parties elements which they did not themselves provide, nor protect one of the contracting parties against subsequent contingency, which would have been advantageous to him, had he but foreseen it." *See also Adkins v. Adams*, 152 F.2d 489, 492 (7th Cir.1945).

The agreement at issue stated that it "may be terminated" either by Prudential or Sipula "at any time." Thus, any express obligations and any implied covenant of "good faith" that may have existed during the course of the contract were extinguished when Sipula was fired. None of the provisions that deal with post-termination obligations refer in any way to post-termination solicitation of or sales to Sipula's former Prudential customers.

■ Prudential is in substance attempting to convert the implied "good faith" covenant that existed while the agency agreement was in force into an implied covenant on Sipula's part not to compete after the termination of the agreement.[5] *Cf. Snyder v. Howard Johnson's Motor*

---

5. It is true that Prudential does not seek to prevent all forms of future competition between itself and Sipula. However, it does attempt to prevent any activity on Sipula's part that would result in the termination of the Prudential policies he either sold or serviced. This is a substantial restraint on Sipula (especially if the policies last for 15 years). In addition, such a restraint would be very difficult to enforce and could overdeter Sipula, because he could not afford to deal with his former clients when any cancellation of their existing insurance (even if not engendered by Sipula's sales efforts) could lead to further litigation. The restraint Prudential seeks implicates all of the concerns raised

by a more general covenant not to compete, *see Smith Oil Corp. v. Viking Chemical Co.*, 127 Ill.App.3d 423, 427, 82 Ill.Dec. 250, 253, 468 N.E.2d 797, 800 (1984) ("the right of an individual to follow and pursue a particular occupation for which he is best trained is a fundamental right" under Illinois law); *Midwest Micro Media, Inc. v. Machotka*, 76 Ill.App.3d 698, 703–05, 32 Ill.Dec. 241, 243–44, 395 N.E.2d 188, 191–92 (1979); *TAD, Inc. v. Siebert*, 63 Ill.App.3d 1001, 1004–07, 20 Ill.Dec. 754, 757–58, 380 N.E.2d 963, 966–67 (1978), and will be considered under the generic rules governing covenants not to compete.

*Lodges, Inc.,* 412 F.Supp. 724, 727 (S.D.Ill. 1976). Restrictions on a former employee's post-termination activities profoundly alters the bargain between the parties to the substantial detriment of the former employee. At the same time, it confers a windfall on the employer, because the latter can obtain the services of the agent at one level of compensation and then impose more onerous obligations after the employment contract is terminated. Had the employee known that his post-termination activities would be so restricted, he could have attempted to obtain, for example, more lucrative compensation, additional terms in his favor, or termination only for cause. Because he was not given the opportunity to do so in the initial bargaining, any implied covenant not to compete fails for lack of consideration, *cf. Snyder,* 412 F.Supp. at 727–28, and will therefore not be imposed on the former employee.

Under Illinois law, even *express* covenants in employment contracts not to compete are extremely disfavored. *See Scheduling Corp. of America v. Massello,* 119 Ill.App.3d 355, 361, 74 Ill.Dec. 796, 801, 456 N.E.2d 298, 303 (1983); *House of Vision, Inc. v. Hiyane,* 37 Ill.2d 32, 225 N.E.2d 21 (1967). As a general rule, an individual cannot be prevented from competing with his former employer absent an express restrictive covenant or a breach of a confidential relationship.[6] *Midwest Micro Media, Inc. v. Machotka,* 76 Ill.App.3d 698, 82 Ill.Dec. 250, 395 N.E.2d 188 (1979); *TAD, Inc.,* 63 Ill.App.3d at 1004–07, 20 Ill.Dec. at

757–59, 380 N.E.2d at 966–68; *see also* Restatement (Second) of Agency § 396. Thus, under the facts as alleged, Prudential can only recover under Count II against Sipula if he in fact improperly used Prudential's confidential information in soliciting his former Prudential clients, so that he would in essence be breaching an implied covenant not to use this information. As we noted in our discussion in Section II(B), *supra,* the character of the policyholder information Sipula obtained while a Prudential agent cannot be definitively resolved on the complaint alone. Thus, we will reverse the dismissal of Count II.

### D. *Remaining Counts*

■ Counts III, IV, and V of the complaint allege a breach of fiduciary duty, a violation of the Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 262, and unfair competition, respectively. To the extent that these additional counts attempt to prevent Sipula from engaging in fair competition with Prudential, they must fail for the reasons set forth in our discussion of Counts I and II. However, they may allow for recovery if Sipula was in fact improperly using confidential policyholder information he obtained while a Prudential agent. As we noted in § II(B), *supra,* the improper use of a trade secret can be "unfair competition" under Illinois law. Similarly, the principal's disclosure of trade secrets to his agent places the agent in a position of confidence and trust, and to this extent

---

**6.** Prudential also alleges an injury to its "near permanent" customer relationship resulting from Sipula's breach of a duty of confidentiality regarding his use of the policyholder information. Under Illinois law, there is authority for the proposition that an employer has a protectable interest in a near-permanent customer relationship, *see Medtronic, Inc. v. Benda,* 689 F.2d 645 (7th Cir.1982), *cert. denied,* 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 955 (1983), although Prudential has not directed our attention to any Illinois cases that protect such an interest in the absence of an express restrictive covenant.

However, we will not address this claim, because the existence of such a customer relationship is highly factbound so that it cannot be resolved from the allegations of the complaint and because Sipula's counterarguments were

not properly presented to this court. *See supra* note 1. Prudential is free to pursue this argument on remand.

We would note, however, that the rule in Illinois appears to be that a protectable interest will be found where *either* a trade secret *or* a near-permanent customer relationship exists *and either* a reasonable restrictive covenant has been executed *or* a breach of confidentiality has occurred. *Lincoln Towers,* 99 Ill.App.3d at 356, 54 Ill.Dec. at 819, 425 N.E.2d at 1036. There is no restrictive covenant in this case. If Sipula cannot prove the existence of a "trade secret," there can be no breach of confidentiality, which renders the existence of a near-permanent customer relationship irrelevant under the facts alleged.

imposes a common-law "fiduciary" duty on the employee. The agent's improper disclosure of the information after the termination of the agency relationship is a breach of his "duty of loyalty." *See MBL (USA) Corp. v. Diekman*, 112 Ill.App.3d 229, 239–40, 67 Ill.Dec. 938, 946, 445 N.E.2d 418, 426 (1983); *Lincoln Towers Insurance Agency v. Farrell*, 99 Ill.App.3d 353, 358–59, 54 Ill.Dec. 817, 821, 425 N.E.2d 1034, 1038 (1981); *Affiliated Hospital Products, Inc. v. Baldwin*, 57 Ill. App.3d 800, 807–08, 15 Ill.Dec. 538, 534, 373 N.E.2d 1000, 1006 (1978); *see also* Restatement (Second) of Agency § 396 (1958). However, as we stated above, the status of the policyholder information cannot be resolved as a matter of law on the basis of the complaint. Thus, the dismissal of Counts III, IV, and V was also premature and will be reversed.

### III

Our decision with reference to Counts I through V only goes to the question of the possibility of Prudential's recovery for Sipula's improper use of confidential information. Other arguments raised by Sipula, *e.g.*, that the claims are duplicative or otherwise defective, have not been properly presented to this court, *see supra* note 1. We, therefore, express no opinion on these issues. If Sipula wishes to pursue these arguments, he must do so on remand.

The judgment of dismissal is REVERSED and the case is REMANDED for further proceedings in conformity with this opinion.