Abraham SANCHEZ, Jr., Plaintiff–Appellant,

v.

William J. HENDERSON, Postmaster General of the United States, Defendant–Appellee.

No. 98–3362.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1999.

Decided July 30, 1999.

Robert D. Whitfield (argued), Chicago, IL, for Plaintiff–Appellant.

Cathleen Martwick (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Defendant–Appellee.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Abraham Sanchez, Jr., a former postal worker, sued William J. Henderson in his capacity as Postmaster General and head of the United States Postal Service ("USPS"), claiming that he was fired in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court granted summary judgment in favor of the USPS, holding that Sanchez was not disabled as defined by the Rehabilitation Act and that the USPS's reason for firing him—his absence from work for over eight months without a documented excuse—was not pretextual. We now affirm.

## Background

In August 1993, Sanchez was injured in a car accident unrelated to his job as a letter carrier for the USPS at its Cragin facility. After a three week absence, Sanchez returned to work and, on the recommendation of his doctor (Dr. Rudy Rodriguez), was given a thirty day light duty assignment sorting mail. The assignment was then extended to sixty days which, according to Barbara Holman, the manager of the Cragin facility at the time, was the maximum period of temporary light duty allowed. When it expired, she ordered Sanchez back to letter carrying, but he refused, telling Holman that he needed full time light duty work instead. After requesting a "Fitness for Duty Examination" and discussing Sanchez's condition with the postal service's medical examiner, Holman found Sanchez a job answering phones at the USPS's Hyde Park facility and told him to report there on October 25, 1993.

Instead of reporting to Hyde Park, Sanchez stayed home and sent Holman a "Return to Work or School" note from Dr. Rodriguez stating that because of his injuries, Sanchez would "be off work for an indefinite period of time."

After two months without hearing anything more from Sanchez, Alma Willis, who took over from Holman as manager of the Cragin facility, sent him a "five-day notice" letter on December 29, 1993. The letter stated that Sanchez had been absent from work for more than five days and warned that, pursuant to the Employee and Labor Relations Manual ("ELRM"), he needed to submit "not less than once per pay period, satisfactory evidence of continued incapacity for work" or he would be considered Absent Without Official Leave ("AWOL"). The letter cited, but did not set forth, the text of Section 513.364 of the ELRM which specified the kinds of documentation required and indicated that medical statements such as "under my care" and "receiving treatment" were not acceptable as evidence of an inability to work. Enclosed with the letter was a Request for Notification of Absence ("Form 3971"). Sanchez responded to the letter on January 3, 1994 with another note from Dr. Rodriguez (nearly identical to the first), and a completed Form 3971 on which he listed "injury comp" as the reason for his absence and stated that he had submitted workers' compensation forms in October 1993.

At some point in early 1994, Lilliette Franklin replaced Willis as the manager at Cragin. Although she had never supervised Sanchez because his absence began before she assumed the position, Franklin occasionally saw him when he stopped by

the facility . use his lock box or socialize with other employees. On one of these occasions, Sanchez told Willis that he was not returning to work anytime soon. Although Franklin did not tell Sanchez when she saw him that the documentation of his inability to work was inadequate, she sent him a second "five-day notice" letter on March 7, 1994. This time Sanchez responded with only a 3971 form, containing essentially the same information as the first. Later, Sanchez testified that he was aware that the form itself did not constitute proper documentation of his absence.

Franklin considered Sanchez's submission insufficient and on March 16, 1994, the same day she received it, she sent a memo to Henrietta Johnson, the area Labor Relations Manager, and Gary Como, the Mid–North Area Manager, recommending that Sanchez "be removed from the roll for abandonment of position." The memo indicated that Sanchez had, at some point during his absence, filed an Equal Employment Opportunity ("EEO") claim relating to his transfer to Hyde Park and that an EEO investigator had visited the Cragin facility the day before.

In early May 1994, Sanchez received a notice from Franklin announcing that unless he responded within ten days, he would be removed from his job for having failed to provide "satisfactory evidence of continued incapacity for work." He did not respond within ten days, although he continued to pay social visits to the Cragin facility. In late May, Sanchez sent his sister to Cragin with what he claims was a packet of information relating to his injuries. The information referenced Sanchez's workers' compensation claim to the Department of Labor ("DOL"). Although late, Franklin accepted the packet and placed it in Sanchez's file. At about this time, Sanchez received a letter from the DOL asking for additional documentation of his claim because his materials lacked "essential factual and medical evidence" to determine whether he was unable to work.

Finally, on June 7, 1994, Como sent Sanchez a decision letter stating that his termination would be effective as of June 15, 1994, and explaining that the information previously submitted, including the 3971 forms and the notes from Dr. Rodriguez, did not adequately substantiate any medical reason for his extended absence. The letter also referred to his workers' compensation claim and noted that he had similarly failed to provide the DOL with sufficient documentation of his condition.

After his termination, Sanchez filed additional EEO claims against the USPS for age, race, gender, and national origin discrimination and retaliatory discharge. After a hearing in February 1996, an ALJ determined that Sanchez had not been discriminated against. The Merit Systems Protection Board ("MSPB") affirmed this decision after its own evidentiary hearing.

While the MSPB appeal was pending, Sanchez filed this action in the district court claiming a variety of forms of discrimination and retaliation under Title VII and discrimination based on disability under the Rehabilitation Act. The court granted the USPS's motion for summary judgment holding that Sanchez had failed to show that he was disabled as defined by the Rehabilitation Act, and that he had failed to present evidence that the postal service's stated reason for the discharge was a pretext for discrimination under Title VII. Sanchez now appeals.

### Discussion

We review a district court's grant of summary judgment de novo, construing the evidence and the inferences drawn from it in the light most favorable to the non-moving party. *See Curran v. Kwon,* 153 F.3d 481, 485 (7th Cir.1998). Summary judgment is appropriate where there is no genuine issue of material fact such that judgment is proper as a matter of law. *See id.* (citing Fed.R.Civ.P. 56(c)). In order for a party "to avoid summary judgment, that party must supply evidence sufficient to allow a jury to render a verdict in

his favor." *Williams v. Ramos,* 71 F.3d 1246, 1248 (7th Cir.1995). The mere existence of some alleged factual dispute is insufficient to defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Rehabilitation Act

Sanchez's first claim is that USPS manager Holman discriminated against him based on his physical condition when she transferred him to Hyde Park for light duty. He invokes the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* which prohibits recipients of federal funds from discriminating against an otherwise qualified individual based solely on that individual's real or perceived disability. *See Duncan v. State of Wisconsin Dept. of Health and Family Services,* 166 F.3d 930, 934 (7th Cir.1999).[1] The Act defines as disabled one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B); 45 C.F.R. § 83.3(i)(iv). Major life activities are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1613.702(d). Substantial limitation in the context of work (the only life activity in which Sanchez claims a perceived impairment) has been described as the inability to perform a broad class of tasks as opposed to a specific job. *See Duncan,* 166 F.3d at 934.

We agree with the district court's conclusion that Sanchez failed to produce suf-

ficient evidence of a disability as defined by the Act. The plaintiff does not claim to have actually had any substantial impairment at the time of his transfer, but insists that he was perceived as having one by Holman, his former supervisor at Cragin. Sanchez's only evidence for the assertion is Holman's request that he undergo a "Fitness for Duty Examination", and the examiner's recommendation that he stop carrying mail. Yet this does not suggest a factual dispute concerning a perceived disability. Initially, Holman's order that Sanchez return to work indicates that she perceived him as not suffering from any impairment. Holman only asked for the examination after Sanchez had refused the order. It does not imply her having regarded him as disabled. Nor does the examiner's conclusion that Sanchez should not return to his old post suggest a perception of disability, for even if he were unable to resume his former duties (far from obvious based on the record), the plaintiff does not contend that such an impairment would rise to the level of "substantial" under the Act. *See Skorup v. Modern Door Corporation,* 153 F.3d 512, 515 (7th Cir.1998) ("It is nearly axiomatic in this Circuit that it is not enough [to prove a disability] for plaintiff to show that [his] impairment prevented [him] from performing one narrow job for one employer.").

Sanchez does not allege that Holman misperceived him as limited generally in the work he could perform for the USPS, *see Johnson v. American Chamber of Commerce Publishers,* 108 F.3d 818 (7th Cir.1997) (holding that impairment need not actually be substantially limiting so long as it is perceived by employer to be), and it is undisputed that Holman knew

---

1. The defendant argues that Sanchez has waived this claim by failing to list discrimination based on disability in his original EEOC charges. *See Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994) (claim not raised in EEOC charges is barred from being raised in district court unless the claim is reasonably related to one of the charges and can be expected to develop from an EEOC investigation into the charges actually raised). Because we hold that Sanchez has failed to establish a claim under the Rehabilitation Act, and because the waiver issue does not involve this court's jurisdiction, *see Cheek,* 31 F.3d at 500, we decline to decide it.

Sanchez could perform other tasks like sorting mail or answering telephones. *See Baulos v. Roadway Express, Inc.*, 139 F.3d 1147, 1151 (7th Cir.1998). If, as Sanchez implicitly concedes, his inability to resume letter carrying does not amount to a substantial impairment under the Act, the USPS's accurate perception of that same inability would not trigger the Act's protections; the plaintiff must be regarded as having a substantial impairment, not just any impairment. *See Hamm v. Runyon*, 51 F.3d 721, 724 (7th Cir.1995) (citing 29 C.F.R. § 1613.702(e)); *see also Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir.1993) (employer's belief that employee is unable to perform one task safely does not by itself establish that employer regarded employee as having substantial limitation of his ability to work in general so as to render employee "disabled" under Rehabilitation Act); *Welsh v. City of Tulsa*, 977 F.2d 1415, 1417–18 (10th Cir.1992) (holding that an impairment that an employer regards as limiting an individual's ability to perform only one job is not a handicap under the Rehabilitation Act).[2] Sanchez has simply not shown that the USPS regarded him as substantially impaired, and he has thus failed to establish a disability under the Act. *Baulos*, 139 F.3d at 1152; *see Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir.1997); *Hamm*, 51 F.3d at 725. We therefore agree with the district court that the USPS is entitled to summary judgment on this claim.

Because Sanchez has not shown that he is protected by the Act, we need not determine whether he has actually been discriminated against on the basis of his physical condition. We do, however, express serious doubt that the USPS's action in transferring Sanchez to accommodate his request for light-duty work could by itself be considered an adverse employment action. Sanchez has failed to allege, for example, that the transfer would result in less pay, responsibility, prestige or opportunity for advancement. Nor has he suggested that the Hyde Park facility is further from his home or an otherwise less desirable place to work than the one at Cragin. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) ("Not everything that makes an employee unhappy is an actionable adverse action."). Without more, we will not assume that a facially reasonable effort to accommodate a claimed impairment can satisfy the adverse action requirement of the Act—even if that impairment were serious enough to rise to the level of disability.

### Title VII

Sanchez next claims that his termination was in retaliation for having sent a letter to the EEO office complaining about his treatment at the hands of the USPS. *See* 42 U.S.C. § 2000e–3(a) (prohibiting employer from taking adverse employment actions against employee for making charges for unlawful employment practice).[3] A claim for retaliation under Title VII invokes a variant of the familiar *McDonnell Douglas* burden-shifting framework requiring the plaintiff to show: that he engaged in statutorily protected

---

**2.** We note that were we to accept Sanchez's implied argument that the Rehabilitation Act's disability analysis should be limited to his mail carrying duties rather than his duties as a postal employee generally, the plaintiff might well "founder on the qualifications requirement [of the Act]." *Duncan* 166 F.3d at 935 (citing *Palmer v. Circuit Court of Cook County*, 117 F.3d 351 (7th Cir.1997)).

**3.** Sanchez's complaint alleged age, race, color, gender, and national origin discrimination and sexual harassment under Title VII in addition to his retaliation claim. He has now explicitly abandoned the age discrimination claim and, by failing to even mention the other Title VII theories in the argument section of his appellate brief, has waived all but the claim for retaliation. *See* FED.R.APP.P. 28(a)(6); *see also Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 965 (7th Cir.1996) (failure to cite any factual or legal basis for an argument waives it); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 n. 1 (7th Cir.1996) (argument that is not developed in any meaningful way is waived).

activity; suffered some adverse action by his employer; and that there exists a causal link between the protected expression and the adverse action. *See Knox v. Indiana,* 93 F.3d 1327, 1333–34 (7th Cir. 1996). Once this is shown, the employer has the burden of producing a valid, nonretaliatory reason for the action. To prevail, the plaintiff must then rebut the employer's proffered reason by proving that it is mere pretext for discrimination. *Id.* at 1334. In this case, because the USPS came forward with a permissible reason for terminating Sanchez—his extended AWOL status—the court appropriately proceeded directly to the issue of pretext without determining whether the plaintiff had established his prima facie case. *See Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 398 (7th Cir.1997). The court then concluded that because Sanchez had presented no evidence that the USPS's stated reason was anything but genuine, the defendant was entitled to summary judgment.

■ A plaintiff can establish pretext either directly, with evidence suggesting that retaliation or discrimination was the most likely motive for the termination, or indirectly, by showing that the employer's proffered reason was not worthy of belief. *See Johnson v. Sullivan,* 945 F.2d 976, 980 n. 5 (7th Cir.1991) (citations omitted). The indirect method requires some showing that "(1) the defendant's explanation has no basis in fact, or (2) the explanation was not the 'real reason', or (3) . . . the reason stated was insufficient to warrant the [termination]." *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir.1996) (citations omitted).

On appeal Sanchez does not allege that being AWOL for eight months is insufficient to warrant removal. Instead he focuses on the first and second indirect approach to showing pretext. Ultimately, however, neither of Sanchez's arguments suggest that the USPS's proffered reason for terminating him was a pretext for retaliation.

■ First, he argues that USPS's requests for medical information during his absence were unclear and misleading, suggesting that his failure to comply with the documentation requirement (and the AWOL status that resulted) was not based in fact. Specifically, he claims that the first five day notice letter did not give adequate indication of the type of documentation required, its frequency, nor the consequences of failing to provide it. Additionally, Sanchez argues that because the notices came so infrequently, he assumed that the information he provided was adequate. Thus the stated reason for his termination—absence for over eight months without proper documentation—is not credible. The district court properly rejected this argument.· The fairness or adequacy of the termination process is not relevant to the question of pretext. *See O'Connor v. DePaul University,* 123 F.3d 665, 670 (7th Cir.1997) (In pretext analysis, "we may not be concerned with whether the decision was right or wrong, fair or unfair, well considered or precipitous. We must look only at whether the reason [given] . . . actually did underlie the plaintiff's termination."). Essentially, Sanchez is claiming that because he thought he was providing adequate documentation, the USPS's conclusion that he was not is pretext.

■ However, this argument is without merit. The pretext analysis seeks to uncover the true intent of the defendant, not the belief of the plaintiff. *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995). Its focus in this case, therefore, is on whether the USPS believed that the documentation he provided was adequate. *See Bahl v. Royal Indemnity Company,* 115 F.3d 1283, 1292 (7th Cir.1997) (in pretext discussion, "the only issue is whether management honestly held these views . . ."). Sanchez had produced no evidence suggesting that it did. On the contrary the USPS's notice of removal letter and the final decision letter both stated that

the defendant did not consider Sanchez's documentation adequate and referenced the sections of the ELRM with which submittals failed to comply. While we agree with the district court that the "five-day notice" letters could have been clearer, those letters, as well as the removal letters, sufficiently indicate that the USPS believed Sanchez was AWOL for failing to provide proper documentation of his injuries. Whether or not the plaintiff also believed it is of no consequence in determining pretext. *Id.*

■ Sanchez next claims that retaliation rather than his AWOL status was the real reason for his termination. He points to Franklin's testimony that on March 15, 1994, the day before she submitted a memo to Henrietta Johnson and Gary Como recommending Sanchez's termination, an EEO investigator stopped by the Cragin facility looking for Sanchez to talk about his claim. Sanchez urges that the proximity of the visit and the recommendation is strong evidence that the termination was motivated by his having filed the complaint. While at first blush this argument has some force, it does not stand up to an examination of the record. First, as the defendant points out, the process of removing Sanchez began long before the EEO officer's visit—presumably starting with the first "five–day notice" letter warning that he was in danger of being considered AWOL. This makes the timing of Franklin's ultimate recommendation to Johnson and Como less suspicious. *See Johnson,* 945 F.2d at 981. Second, Sanchez can point to nothing suggesting that the EEO officer's visit marked the first Franklin had heard of Sanchez's having filed the complaint. Sanchez apparently started complaining to the EEO office in November 1993, nearly four months before Franklin recommended terminating him. We have previously held that, as a matter of law, mere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive. *Johnson,* 945 F.2d at 981.[4] But the third and perhaps most fundamental problem with Sanchez's proximity argument is that although Franklin's memo was sent close on the heels of the EEO officer's visit, it followed even closer Sanchez's failure to provide adequate documentation—the stated nondiscriminatory reason for his termination. Franklin had sent a second "five-day notice" letter in early March 1994, and received Sanchez's reply on March 16. Because it contained only a 3971 form, Franklin testified that she considered the documentation inadequate and later that day sent the memo recommending that his name be removed from the rolls. Even Sanchez admits that the 3971 form was not proper proof of medical absence. To conclude that retaliation was the real motive based on this evidence borders on pure speculation, and as we have stated "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Tyler v. Runyon,* 70 F.3d 458, 469 (7th Cir.1995) (quoting *Hedberg v. Indiana Bell Tel. Co. Inc.,* 47 F.3d 928, 932 (7th Cir.1995)). Under these circumstances, Sanchez's argument does not cast doubt on the USPS's stated reason for the termination, and we therefore agree with the district court that Sanchez has failed to present substantial pretext evidence.

### Conclusion

Because Sanchez has not produced sufficient evidence that he is covered by the

---

4. While this court has held that suspicious timing can raise an inference of discrimination sufficient to satisfy the causation element of the prima facie case, *see Dey v. Colt Construction & Development Co.,* 28 F.3d 1446, 1458 (7th Cir.1994); *but see Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1178 (7th Cir. 1998) ("Timing may be an important clue to causation, but does not eliminate the need to show causation[.]"), we are here dealing with whether Sanchez's evidence rebuts the USPS's proffered justification—not whether he has satisfied his initial showing. *Dey,* 28 F.3d at 1457. In this context, we must look at the timing not in isolation—as we would in determining whether Sanchez had established a prima facie case—but in conjunction with the evidence presented by the defendant. *Id.*

Rehabilitation Act, and has not shown that his termination was a pretext for retaliation, we AFFIRM the district court's grant of summary judgment in favor of the USPS.