**Suzanne M. ACCURSO, Plaintiff,**

v.

**UNITED AIRLINES, INC. and Elise J. Jackson, Defendants.**

No. 99 C 8423.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 23, 2000.

Lori D. Ecker, Law Office of Lori D. Ecker, Chicago, IL, Richard J. Gonzalez, Chicago–Kent College of Law, Illinois Institute of Technology, Chicago, IL, for plaintiff.

Paul R. Brockmeyer, Seyfarth, Shaw, Washington, D.C., Joel H. Kaplan, M. Andrew McGuire, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants United Airlines, Incorporated and Elise J. Jackson's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants defendants' motion for summary judgment.

## I. BACKGROUND

Plaintiff Suzanne M. Accurso ("Accurso"), a female Caucasian, worked for defendant United Airlines, Incorporated ("United") from 1986 until 1999 at O'Hare International Airport ("O'Hare"). Defendant Elise J. Jackson ("Jackson"), an African–American female, supervised Accurso.

United hired Accurso in 1986. During her employment, Accurso held various customer service positions and served as an instructor in the training department. In June of 1994, United promoted Accurso to Service Director. As Service Director, Accurso was responsible for ensuring that the customer service representatives under her direction complied with United's rules and regulations.

Until 1999, United had never disciplined Accurso. In fact, in 1994 and 1995, she received very good job-performance reviews.

In January of 1999, United's Manpower Office contacted Jackson to inquire into discrepancies between Accurso's payroll and vacation schedules. After reviewing Accurso's various schedules with Accurso and other supervisors, Jackson brought the discrepancy to her own immediate supervisor Diane LeBeau ("LeBeau"). To determine whether Accurso was working on the days in question, LeBeau asked Jackson to pull Accurso's translog report [1] for the period in question.

While reviewing Accurso's translog report, LeBeau noticed that on a number of days United payed Accurso for overtime yet her translog reports for those days showed no computer activity. (Accurso Dep. 55:21–24 & 56:1–2.) LeBeau then conducted a more thorough evaluation by also examining Accurso's proximity and city swipe cards [2] for the dates in question. This investigation revealed that Accurso had accepted payment for time she had not worked.

Around the same time, LeBeau also learned that Accurso violated numerous policies when she involved herself in United Flight Number 423 on which her friend, Jeff Glynn, and his friends were booked to fly. Accurso's involvement in this flight included: (1) using another customer service representative's computer to change the name of an individual flying and (2) off-loading Glynn and his party from the flight to issue voluntary denied boarding compensation worth $300 each.[3]

Based upon the investigation into Accurso's payroll and vacation discrepancies and Accurso's involvement in Flight Number 423, LeBeau made the decision to suspend Accurso without pay. Jackson signed the suspension letter and gave it to Accurso on February 8, 1999. Jackson then escorted Accurso out of O'Hare. According to Accurso, while escorting Accurso from the premises, Jackson responded to Accurso's objections of Jackson's more favorable treatment of African–American employees by stating "some people deserve my protection" and "some people don't cause as much trouble as you do." (Pl.'s Dep. at 193:8–12.)

Following a formal hearing, LeBeau made the decision to terminate Accurso's employment and drafted a letter setting forth the reasons for her termination. Jackson then signed and delivered this letter to Accurso.

During the third-step of the appeal process, Accurso asserted for the first time that she believed her employment was terminated because she had encouraged customer service representatives to assert their complaints of reverse discrimination. Despite this, after a four-step appeal process, Accurso's termination was affirmed by United.

Accurso brought this suit against United and Jackson (collectively "defendants") pursuant to 42 U.S.C. § 1981 (" § 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. and 28 U.S.C. § 1367. In Counts I, II and V, Accurso alleges that defendants retaliated against her for encouraging others to complain about reverse discrimination in violation of 42 U.S.C. § 2000e–3. In Counts III, IV and VI, Accurso alleges that defendants discriminated against her because she is Caucasian when they sus-

1. A "translog report" consists of every computerized transaction performed by a United employee on any given day.

2. A "proximity card" permits access to various secured rooms inside the airport. A "city swipe card" permits access to the employee parking lot and other secured doors on O'Hare's grounds. A computerized record of an employee's movement to, from and within United's O'Hare facility can be generated from the use of these cards.

3. "Voluntary denied boarding compensation" is a travel credit offered to passengers on over-booked flights.

pended her and terminated her employment. In Count VII, Accurso alleges that United breached an employment contract with her when it suspended and terminated her employment. Finally, in Count VIII, Accurso alleges that Jackson interfered with Accurso's employment relationship with United.

The matter is currently before the court on the defendants' motion for summary judgment. The defendants contend that they are entitled to judgment as a matter of law on Counts I–VI because (1) Accurso has failed to establish a prima facie case of retaliation or discrimination and (2) even if Accurso has established a prima facie case, Accurso is unable to establish that the defendants' legitimate nondiscriminatory reasons for suspending and terminating her employment are pretextual. The defendants also contend that they are entitled to judgment as a matter of law on Counts VII and VIII because Accurso has failed to establish the requisite elements of each cause of action.

## II. *DISCUSSION*

### A. *Standard for deciding a motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir.1997).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party presents a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

### B. *Counts I, II and V—Retaliation claims*

In Counts I, II and V, Accurso alleges that the defendants violated § 1981 and Title VII by suspending her—and ultimately terminating her employment—in retaliation for her encouraging others to complain about reverse-race discrimination. To establish a prima facie case of retaliation, Accurso must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse employment action. *Eiland v. Trinity Hosp.,* 150 F.3d 747, 753 (7th Cir. 1998). Once Accurso establishes her prima facie case, the defendants have the burden of producing a valid, non-retaliatory reason for their action. *See Sanchez v. Henderson,* 188 F.3d 740, 746 (7th Cir. 1999). In order to prevail, Accurso must then rebut the defendants' proffered reason by establishing that it is merely pretextual. *Id.*

The defendants do not address the first element of Accurso's prima facie case; thus, the court will assume that Accurso has established she was engaged in a statutorily protected activity. Furthermore, Accurso has sufficiently alleged that she suffered from an adverse employment action, her suspension and termination. Thus, she has established the first and second element of her prima facie case. Accordingly, the court will focus on the

required causal link between the adverse employment action and the protected activity.

■■■ A plaintiff can establish the causal link "by showing that there was a suspiciously short period of time between" her complaint and the adverse employment action. *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1039 (7th Cir. 1998). As the time period between the two events increases, the hint of a causal link decreases. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir. 1998) (citing *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796–97 (7th Cir. 1997)). In this case, assuming that the decision-makers at United were aware of Accurso's involvement in encouraging others to complain about reverse-race discrimination, Accurso's latest encouragement of others to complain of reverse-race discrimination occurred in November of 1998. However, United did not suspend and terminate her employment until February of 1999. This three-month time period is not sufficient to establish a causal link. *See Parkins,* 163 F.3d at 1039 (finding that a time period of three months between the protected activity and the adverse employment action is insufficient in establishing a causal link). Thus, Accurso has failed to establish her prima facie case of retaliation.

Furthermore, even if Accurso had established her prima facie case, she has failed to establish that the defendants' proffered nondiscriminatory, legitimate reason for suspending and terminating her employment, *see* Part II.C.2., was pretextual, *see* Part II.C.3. Accordingly, the court grants defendants' motion for summary judgment on Counts I, II and V of Accurso's complaint.

## C. *Counts III, IV and VI—Employment discrimination*

In Counts III, IV and VI, Accurso alleges that United violated § 1981 and Title VII by discriminating against her in her employment. Section 1981 "addresses racial discrimination in contractual relationships." *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir.1996). Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion," or sex. 42 U.S.C. § 2000e–2(a)(1). Claims under § 1981 and Title VII are analyzed in the same manner. *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 176 (7th Cir. 1996). Accordingly, Accurso's employment discrimination claims under § 1981 and Title VII will be analyzed together. Discrimination may be established in either of two ways—through direct evidence or through the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir.1991).

### 1. *Direct or "mixed motives" method*

■■■ Under the direct evidence method, the "plaintiff initially must prove 'through direct evidence that the employment decision at issue was based upon an impermissible factor.'" *Id.* (quoting *Randle v. LaSalle Telecomms., Inc.,* 876 F.2d 563, 568 (7th Cir.1989)). The evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Randle,* 876 F.2d at 569. A statement is direct evidence only if it relates to the "motivation of the decision-maker responsible for the contested decision." *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 396 (7th Cir. 1997).

■■■ In this case, Accurso alleges that Jackson's comments on the day of Accurso's suspension constitute direct evidence of discrimination. According to Accurso, in response to her statement that it was obvious that Jackson would protect the people

she wants to protect, Jackson replied "some people deserve my protection" and "some people don't cause as much trouble as you do." (Pl.'s Dep. at 193:8–12.) Assuming for the moment that Jackson was the decision-maker, these two comments do not speak directly to the issue of discriminatory intent because neither statement even mentions race. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 723–24 (7th Cir.1998); *Brown v. Commonwealth Edison Co.,* No. 95 C 3501, 1998 WL 142455, at \*18 (N.D.Ill. Mar.23, 1998). Thus, the trier of fact could not conclude that Accurso's suspension and ultimate termination were the result of any animus due to her race without adopting certain inferences and presumptions. That—by definition—is not direct evidence. *See Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997) ("Direct evidence would be what [defendant] and its employees said or did in the specific employment decision in question.").

Thus, Accurso must satisfy her burden with circumstantial evidence. Circumstantial evidence is evidence that provides "a basis for drawing an inference of intentional discrimination." *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). There are three types of circumstantial evidence which Accurso could rely upon in order to avoid the *McDonnell Douglas* burden-shifting method: (1) evidence consisting of "suspicious timing, ambiguous statements, oral or written, behavior directed toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn;" (2) evidence that similarly-situated employees who were not Caucasian received systematically better treatment; and (3) evidence that "the plaintiff was qualified for the job in question but ... [was] replaced by a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, or a mere pretext for discrimination." *Id.*

The only potential argument Accurso makes involves the first type of circumstantial evidence. She alleges that Jackson's statements at the time Jackson was escorting her out of O'Hare after her suspension are evidence of discrimination. However, "timing alone does not create an inference of discrimination." *Marshall,* 157 F.3d at 526 (citing *Hunt–Golliday v. Metropolitan Water Reclamation, Dist.,* 104 F.3d 1004, 1011 (7th Cir.1997)). Accurso must show some type of connection between her suspension and her race. *Id.* Assuming that Jackson did indeed make these statements, Accurso has not set forth any evidence which establishes that Jackson was, in fact, the decision-maker or that a connection between her suspension and her race existed. None of these statements have anything to do with Accurso's race nor do they indicate that United was suspending Accurso because of her race and not her misconduct. Furthermore, Accurso has provided no evidence that LeBeau—the decision-maker in this case—made any ambiguous statements nor that any alleged biases of Jackson tainted LeBeau's decision to terminate Accurso. *See Hoffman v. MCA, Inc.,* 144 F.3d 1117, 1121 (7th Cir.1998). Thus, because there is no direct or circumstantial evidence of discrimination, the court will examine Accurso's case under the *McDonnell Douglas* burden-shifting method.

### 2. *McDonnell Douglas burden-shifting method*

Under *McDonnell Douglas,* the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of employment discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case, Accurso must show: (1) that she belongs to a protected group; (2) that she performed satisfactorily; (3) that her employer subjected her to an adverse employment action; and (4) that similarly-situated employees outside her classification received more favorable treatment. *Hughes v. Brown,* 20

F.3d 745, 746 (7th Cir.1994). If the plaintiff establishes a prima facie case, then "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision." *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 931 (7th Cir.1996). If an employer meets its burden, then the plaintiff must show, by a preponderance of the evidence, that the employer's stated reason for dismissal is nothing more than pretext. *Id.*

### a. The prima facie case

■ Accurso's claims of employment discrimination are based on United's decision to suspend her and to ultimately terminate her employment. Neither party addresses either the first or the third element of Accurso's prima facie case. The defendants, however, contend that Accurso has failed to establish both elements two and four of her prima facie case.

A plaintiff can establish the second element of the prima facie case through her own testimony that her performance was satisfactory. *Weihaupt v. American Med. Ass'n,* 874 F.2d 419, 428 (7th Cir.1989). Accurso contends that her performance was satisfactory for over twelve years as she continually received "effective" and "highly-effective" performance evaluations from United. However, her performance must have been satisfactory at the time of her alleged termination—not just at some time during her employment. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1262 (7th Cir.1993). At the time of her suspension and ultimate termination, United had discussed with Accurso her acceptance of pay for hours she did not work and her involvement in improperly compensating her boyfriend and his friends on Flight Number 423. Accurso does not dispute this. Thus, Accurso has failed to establish that her performance was satisfactory at the time of her alleged termi-

nation. By not establishing element two of the prima facie case, Accurso has failed to meet her burden of establishing a prima facie case of discrimination.[4]

### b. Legitimate, nondiscriminatory reason

Furthermore, even if Accurso established her prima facie case, the defendants have established a legitimate, nondiscriminatory reason for suspending and terminating her employment. United contends that it suspended and terminated Accurso's employment because she accepted pay for time she did not work and interfered with Flight Number 423. As the Seventh Circuit has stated, the court will "not sit as a super-personnel department that reexamines an entity's business decisions." *Debs v. Northeastern Ill. Univ.,* 153 F.3d 390, 396 (7th Cir.1998). Thus, the defendants have offered legitimate, nondiscriminatory reasons for suspending and terminating Accurso's employment.

### c. Pretext

Because the defendants established legitimate, nondiscriminatory reasons for United's decisions, Accurso must show that the proffered reasons are pretextual. In order to do so, Accurso must *"specifically refute the facts which allegedly support the employer's proffered reasons." Mills v. First Fed. Sav. & Loan Ass'n,* 83 F.3d 833, 845 (7th Cir.1996) (citation omitted) (emphasis in original). There are three ways to show that the proffered, nondiscriminatory reasons are pretextual: (1) the employer's explanation has no basis in fact; (2) the explanation is insufficient to warrant the adverse employment action; or (3) the explanation is not the "real" reason. *Id.*

In this case, Accurso, aside from setting forth the standard for establishing pretext, makes no arguments showing that United's proffered reasons for suspending and

---

4. The court will not, therefore, go into a detailed discussion of the fourth element. However, Accurso's prima facie case would also fail based on the fourth element. Accurso has not identified any similarly-situated employee, who was not Caucasian, that United retained.

terminating her employment were pretextual. Thus, Accurso has failed to establish that United's proffered reasons are mere pretext.

In sum, Accurso has failed to establish her prima facie case and failed to show that United's proffered reasons were pretextual. Accordingly, the court grants the defendants' motion for summary judgment on Counts III, IV and VI of Accurso's complaint.

## D. *Illinois State Law Claims*

■ Because Accurso's federal claims do not survive summary judgment, the court can only reach the merits of Accurso's state law claims if supplemental jurisdiction under 28 U.S.C. § 1367 is proper. "When all federal claims are dismissed prior to trial, the court should generally relinquish jurisdiction over pendent state law claims, *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727 (7th Cir.) *cert. denied,* 525 U.S. 870, 119 S.Ct. 167, 142 L.Ed.2d 136 (1998), but if an 'obviously correct' interpretation of state law 'knocks out the plaintiff's state law claim . . . the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case.' *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir.[1997])." *Murphy v. Village of Hoffman Estates,* No. 95 C 5192, 1999 WL 160305, at *11 (N.D.Ill., Mar.17, 1999). In this particular case, because this court can easily address and "knock out" Accurso's state law claims, the court will do so.

### 1. *Count VII—Breach of contract claim*

In Count VII, Accurso alleges that United breached various policy statements regarding discrimination when it suspended and terminated her employment. The defendants, however, assert that these policy statements were not contractual. Aside from the arguments made in this subsection, Accurso does not claim to have any other contractual rights to employment.

■ Under Illinois law,[5] employment is assumed to be an "at-will" arrangement which either the employer or employee can terminate at any time and for any reason. *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998, 1002 (1982). Policy statements are not considered contractual unless (1) "the language of the policy statement . . . contain[s] a promise clear enough that an employee would reasonably believe that an offer has been made;" (2) "the statement . . . [is] disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer;" and (3) "the employee . . . commenc[es] or continu[es] to work after learning of the policy statement." *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (1987). Thus, the first question is whether the policy statements contain "a clear and explicit" promise of an arrangement other than at-will employment. *See Hultquist v. Hartman,* No. 94 C 424, 1994 WL 383952, at *3 (N.D.Ill. July 20, 1994).

■ In this case, Accurso has not presented any evidence that the various policy statements contain a "clear and explicit" promise that United made an offer of tenured employment. The language upon which Accurso relies states: "United shall provide work environments in which all employees are free from harassment. . . . The Company will not retaliate against employees who are involved in a compliance review or an investigation of a discrimination complaint." (Pl.'s Compl. at ¶ 39.) Accurso further relies upon the statement: "[N]o employee will be retaliated against for reporting a good faith allegation of harassment or discrimination."

---

5. Although neither party has addressed the choice of law issue, the court finds that both parties assent to the application of Illinois law. The court bases this decision on both Accurso's and defendants' citation of Illinois case law in support of their arguments.

(*Id.* at ¶ 40.) First, Accurso has provided no evidence of these policies aside from the statements in her complaint. However, based on the quoted excerpts, neither of these statements guarantee or offer Accurso continued employment and cannot be construed as establishing any contractual rights. Second, even if Accurso had presented this court with evidence that this policy created an employment contract, this claim would still fail. As Accurso's claims of retaliation have failed, there is no evidence that United suspended and terminated Accurso's employment for reporting discrimination. Thus, United did not violate the policy at issue. Accordingly, the court grants defendants' motion for summary judgment on Count VII of Accurso's complaint.

### 2. *Count VIII—Tortious interference*

In Count VIII, Accurso alleges that Jackson tortiously interfered with her contractual relationship with United or with her expectation of continued employment. Thus, Accurso claims are for tortious interference with contract or for tortious interference with prospective economic advantage.

#### a. Tortious interference with contract

 Under Illinois law, Accurso must show: (1) the existence of a valid and enforceable contract between herself and United; (2) Jackson's awareness of this contractual relationship; (3) Jackson's intentional and unjustified inducement of a breach of that contract which caused a subsequent breach by United; and (4) damages. *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir.1992). In this case, Accurso cannot establish the first element because she is an at-will employee. *See Prudential Ins. Co. v. Sipula*, 776 F.2d 157, 162 (7th Cir.1985) ("[An] inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations."). Thus, to the extent that Count VIII is based on interference with a contractual relationship, the court grants the defendants motion for summary judgment. However, the court must also analyze Accurso's claim of interference with a prospective economic advantage.

#### b. Tortious interference with a prospective economic advantage

 Under Illinois law, Accurso must show: (1) a reasonable expectation of entering into a valid business relationship; (2) Jackson's knowledge of Accurso's expectancy; (3) Jackson's purposeful interference and defeat of this legitimate expectancy; and (4) damages. *Id.* at 162–63. In this case, Accurso has again failed to set forth any argument or evidence aside from her recitation of the rules. Specifically, there is no evidence that Accurso had a reasonable expectation of remaining employed with United despite her misconduct. Furthermore, even if she had a reasonable expectation, Accurso has failed to establish that Jackson purposefully interfered in the relationship. " 'Purposeful interference' means that defendant has committed some type of impropriety in interfering with the expectancy." *Harris v. Franklin–Williamson Human Servs., Inc.*, 97 F.Supp.2d 892, 908 (N.D.Ill.2000) (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358 (1998)). There is no evidence that Jackson committed any impropriety in gathering information on Accurso's misconduct for LeBeau. Thus, the court finds that Accurso has failed to establish tortious interference with a prospective economic advantage.

In sum, Accurso has failed to establish that Jackson tortiously interfered with a contract or tortiously interfered with a prospective economic advantage. Accordingly, the court grants the defendants' motion for summary judgment on Count VIII of Accurso's complaint.

### III. *CONCLUSION*

For the foregoing reasons, the court grants the defendants' motion for summary judgment. Final judgment in this case is entered in favor of defendants United Airlines, Incorporated and Elise J. Jackson and against plaintiff Suzanne M. Accurso.