**Mirella FIGUEROA–LOPEZ, et al., Plaintiffs,**

v.

**Leoncio HILERIO–PADILLA, et al., Defendants.**

**CIVIL NO. 98–1325(JAG).**

United States District Court, D. Puerto Rico.

April 30, 2002.

Frank D. Inserni–Milam, San Juan, PR, for plaintiffs.

Frances R. Colon–Rivera, San Juan, PR, Gloria Robison–Guarch, Dept. of Justice, Fed. Litigation Div., San Juan, PR, Mi-

riam R. Ramos–Grateroles, San Juan, PR, Victor M. Rivera–Torres, San Juan, PR, Enrique Velez–Rodriguez, San Juan, PR, Eric Perez–Ochoa, O'Neill Fernandez Gilmore & Perez Ochoa, P.S.C., San Juan, PR, for defendants.

Puerto Rico Ports Authority, San Juan, PR, pro se.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

In its opinion and order of September 30, 1999, the Court granted co-defendant Wilson Forestier's ("Forestier") motion for summary judgment. (Docket No. 13). The Court also held that the cause of action for Title VII liability against co-defendant Northwest Security Inc. ("Northwest") remained to be tried before a jury. Northwest filed a motion for reconsideration of the Court's opinion and order. (Docket No. 37). Northwest also filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(b)(6). (Docket No. 38). Northwest further filed three supplemental motions in support of its motion for judgment on the pleadings. (Docket Nos. 41, 57 and 59). Plaintiffs Mirella Figueroa ("Figueroa"), Tamaris Jusino Figueroa ("Tamaris"), Guillermo Jusino Figueroa ("Guillermo"), and Mirelys Jusino Figueroa ("Mirelys") did not oppose Northwest's motions. The Court referred the pending motions to U.S. Magistrate Judge Justo Arenas for a report and recommendation. (Docket No. 64.) Upon careful review of the Magistrate Judge's reports and recommendations (Docket Nos. 71, 73, and 74) the Court hereby adopts them in their entirety. Accordingly, Northwest's motion for judgment on the pleadings (Docket Nos. 38, 41, 57 and 59) and its motion for reconsideration (Docket No. 37) are hereby **GRANTED.**

## STANDARD OF REVIEW

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 503. The losing party may contest the report and recommendation by filing written objections within ten days of being served with a copy of the report and recommendation. The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The Court may accept, reject or modify, in whole or in part, the Magistrate Judge's recommendations.

■ Here, plaintiffs requested an extension of time until November 9, 2001 to submit written objections to the Magistrate Judge's reports and recommendations. Plaintiffs, however, failed to submit written objections to any portion of the report within the specified time and failed to request from the Court additional time to file its objections. *See Pineda v. Almacenes Pitusa, Inc.,* 982 F.Supp. 88, 90 (D.P.R.1997). Plaintiffs objections (Docket No. 76), filed on November 29, 2001, are, therefore, untimely. Accordingly, further appellate review is precluded. *See Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994)(Failure to file any objections within ten days of the Magistrate Judge's report and recommendation waives the right to appeal.); *Salud Para El Pueblo v. Department of Health of the Com. of Puerto Rico,* 959 F.Supp. 83, 85 (D.P.R., 1997). The Court, however, prefers to err on the side of caution and adopt the Advisory Committee's view that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation." Fed.R.Civ.P. 72(b) advisory committee's note (1983) (emphasis added). Accordingly, the Court has reviewed plaintiffs' objections and the Magistrate Judge's reports and recommendations to determine whether they were clearly erroneous. *See Nogueras–Cartagena v. U.S.*, 172 F.Supp.2d 296, 305 (D.P.R., 2001).

## FACTUAL BACKGROUND[1]

Between August 1993 and June 1996, Figueroa worked as a Security Guard for Caribbean Security ("Caribbean") at the Mayaguez Port of the Puerto Rico Ports Authority ("PRPA"). During that time, Figueroa was subjected to numerous incidents of sexual harassment by the Port's Acting Administrator, co-defendant Leonicio Hilerio Padilla ("Padilla"); and to incidents of undue pressure by the Mayaguez Airport's Supervisor, co-defendant Arturo del Valle ("del Valle"). In June 1996, Figueroa reported the incidents to Mr. Guadalberto Capdeville, Chief of the PRPA Maritime Division. Figueroa also filed a criminal complaint for defamation against Padilla with the Puerto Rico Police, but Padilla was soon acquitted from this charge.

On June 16, 1996, PRPA awarded defendant Northwest Security, Inc. ("Northwest"), the contracts for the delivery of security services at PRPA's ports, including the Mayaguez port. In June 1996, Figueroa began working for Northwest.

On April 8, and May 1, 1997, PRPA officials verbally requested Northwest to transfer Figueroa from the Mayaguez Port. On both occasions, Northwest and co-defendant Wilson Forestier ("Forestier"), Manager for Northwest and Figueroa's supervisor at the time, declined to transfer Figueroa until PRPA put its request in writing. On June 24, 1997, PRPA put its request in writing, and Forestier informed Figueroa that she was being transferred from the Mayaguez Port upon PRPA's requests. Forestier explained to Figueroa that pursuant to the security contract[2], PRPA was empowered to substitute, increase or decrease Northwest's security guards, whenever PRPA deemed necessary. Forestier also explained to Figueroa that if Northwest were not to comply with PRPA's request, PRPA would be authorized to rescind Northwest's service contract[3]. Soon after Figueroa was transferred from the Mayaguez Port to the University of Puerto Rico's Campus in Aguadilla.

## DISCUSSION

### I) Discrimination and retaliatory animus by Northwest.

#### a) The *Prima Facie* Case

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), plaintiffs bears the initial burden of establishing a *prima facie* case of Title VII discrimination. *See McDonnell Douglas Corp.* 411 U.S. at 802, 93 S.Ct. 1817. The specifications of the *prima facie* proof vary depending on the nature of the discrimination claim. *See McDonnell Douglas Corp.* 411 U.S. at 802 n. 13, 93 S.Ct. 1817. With respect to retaliation claims, the *prima facie* model requires plaintiffs to show that: 1) Figueroa engaged in a protected conduct; 2) Figueroa suffered an adverse employment action; and 3) there is a causal connection between the protected conduct and the

---

1. The Factual Background is taken from the Court's opinion and order of September 30, 1999.

2. Part "8", clause "a".

3. Part "5", clause "e".

adverse employment action. *Hernandez–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998).

■ Plaintiffs claim that they have established a *prima facie* case of discriminatory retaliation against Figueroa, inasmuch as they have proffered sufficient facts to demonstrate that Northwest transferred Figueroa in retaliation for her complaining about sexual harassment perpetrated by PRPA's executive, Padilla. (Docket 76 at 5). The Magistrate Judge held that plaintiffs failed to establish a *prima facie* case inasmuch as Figueroa did not engage in the protected activity while employed by Northwest. (Docket 79 at 3–4). The Magistrate Judge concluded that, as a matter of law, Figueroa's transfer was not causally related to her filing of criminal charges against Padilla. (Id.)

■ One way of showing causation is by establishing that the protected activity was close in time to the employer's adverse action. *Wyatt v. City of Boston,* 35 F.3d 13, 16 (1st Cir.1994). In this case Figueroa engaged in protected activity one year prior to being transferred. *See Salvato v. Illinois Dep't. of Human Rights,* 155 F.3d 922, 925 (7th Cir.1998) (six months between protected activity and employment action too long to establish causal link between two events); *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir.1998) (five months too long); *Hughes v. Derwinski,* 967 F.2d 1168, 1174 (7th Cir.1992) (four months too long to suggest causal link). Hence, plaintiffs have failed to establish a *prima facie* case of retaliation.

Establishment of the prescribed *prima facie* case creates a presumption that the employer engaged in impermissible discrimination. *See Burdine,* 450 U.S. at 254,

101 S.Ct. 1089. To rebut this presumption, Northwest need only articulate a legitimate nondiscriminatory reason for transferring Figueroa. *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817. Northwest's obligation is simply one of production.

**b) Northwest's Legitimate Non Discriminatory Reason**

■ In this case Northwest has not only stated its legitimate nondiscriminatory reasons for its personnel decision but further has presented substantial affirmative proof of those reasons. Northwest asserts that the reason behind its employment decision was nondiscriminatory, business related, and responded exclusively to its contractual duties with PRPA.

Northwest proffered the service contract it had with PRPA to corroborate that under said contract[4], PRPA was empowered to substitute, increase or decrease Northwest's security guards, whenever PRPA deemed it necessary. The security contract clearly states that if Northwest were not to comply with PRPA's request, PRPA would have been authorized to rescind Northwest's service contract[5].

Accordingly, Northwest has provided sufficient evidence for a reasonable jury to conclude that Northwest was obliged under the security contract to transfer Figueroa out of the Mayaguez port. *See Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 645, 658, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *See also Mullin v. Raytheon Co.,* 164 F.3d 696, 700 (1st Cir. 1999).

4. Part "8", clause "a".

5. Part "5", clause "e".

■ Once the employer has proffered a legitimate, nondiscriminatory reason for its adverse decision, the presumption generated by the employee's *prima facie* case disappears, and the burden falls back upon the employee to prove that the reason advanced by the employer for the adverse action constituted a mere pretext for unlawful retaliation. *See Lawrence*, 980 F.2d at 69–70. *See also Mesnick v. General Elec. Co.*, 950 F.2d 816, 824–826 (1st Cir.1991). "To prevail under federal law, it is insufficient for a plaintiff merely to undermine the veracity of the employer's proffered justification; instead, she must muster proof that enables a factfinder rationally to conclude that the stated reason behind the adverse employment decision is not only a sham, but a sham intended to cover up the proscribed type of discrimination." *Dichner v. Liberty Travel*, 141 F.3d 24, 30 (1st Cir.1998).

### c) The Pretext for Discrimination

■ Plaintiffs contend that there is sufficient evidence of discriminatory motivation based on retaliation in this case. (Docket 76 at 6–7). Nevertheless, the only argument advanced by plaintiffs to support their contention is that Northwest knew that PRPA's request to transfer Figueroa was motivated by Padilla's return to the Mayagüez Port. (Docket 76 at 8). The argument is meritless. "[A]s a matter of law, mere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive." *Sanchez v. Henderson*, 188 F.3d 740, 748 (7th Cir.1999). For a retaliation claim "to survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." *King v. Town of Hanover*, 116 F.3d 965, 968 (1st Cir.1997).

■ The record shows that Northwest's decision to transfer Figueroa came after three requests from PRPA, the last one in writing, and acting upon a contractual clause. In this sense, Northwest's action was the result of the government's decision as to which Northwest had no input. The relevant question is not whether Northwest's action was wise but "[S]imply whether the given reason was a pretext for illegal discrimination". *Loeb v. Textron*, 600 F.2d 1003, 1012 (1st. Cir.1979). See also *Dea v. Look, supra; Menard v. First Sec. Services Corp.*, 848 F.2d 281, 287 (1st Cir.1988). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). See also Board of *Trustees v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216(1978).

Here, Figueroa has not provided any evidence that links Northwest's compliance with its contractual obligation with a discriminatory animus. Furthermore, Northwest's reasons for the transfer were put in writing and corroborated. Thus, plaintiffs' contention fails to raise an issue of material fact as to pretext.

### CONCLUSION

For the foregoing reasons, the Court hereby adopts the Magistrate Judge's reports and recommendations (Docket Nos. 71, 73, and 74) in their entirety. Northwest's motion for judgment on the pleadings (Docket Nos. 38, 41, 57 and 59) and its motion for reconsideration (Docket No. 37) are hereby **GRANTED**.

Accordingly, plaintiffs' Title VII retaliation claim against Northwest and Foresti-

84

er is hereby **DISMISSED WITH PREJU-DICE** for failure to state a cause of action.

IT IS SO ORDERED.